283 A'.2d 255.

BRENDA RITTER, *p.a. vs.* THE NARRAGANSETT ELECTRIC
COMPANY *vs.* AMERICAN MOTORS CORPORATION *et al.*

NORMA RITTER, *p.a. vs.* SAME.

BRIDGET RITTER *vs.* SAME.

NOVEMBER 1, 1971.

PRESENT: Roberts, C. J.. Paolino, Powers, Joslin and Kelleher, JJ.

ROBERTS, C. J. In February of 1965 each of the three plaintiffs instituted an action of trespass on the case for negligence against The Narragansett Electric Company to recover damages for injuries alleged to have resulted from the negligence of the defendant Narragansett Electric Company. In September of 1966 the defendant Narragansett Electric Company, hereinafter referred to as Narragansett, acting pursuant to Super. R. Civ. P. 14(a), added the defendant American Motors Corporation as a third-party defendant in each action, and in March of 1967 each of the plaintiffs, proceeding under Rule 14(a), asserted a direct claim against the third-party defendant, American Motors Corporation.[1]

All of the cases, consolidated for trial, were heard by a justice of the Superior Court sitting with a jury. The jury returned a verdict for each plaintiff against defendant Narragansett and third-party defendant American Motors. A verdict was also returned for third-party plaintiff Narragansett in each case against third-party defendant American Motors.[2] During the course of the trial each plaintiff

---

[1] It is to be noted that each plaintiff had also instituted an action in assumpsit to recover damages alleged to have resulted from a breach of a warranty by the defendant Narragansett. In these cases the defendant Narragansett also added the defendant American Motors as a third-party defendant in each suit, and thereafter each plaintiff asserted a direct claim against the third-party defendant. After the trial the jury returned a verdict in each of these assumpsit actions for the defendant. No motions for a new trial were made, and judgment was entered for the defendants. No appeal has been taken in any of these cases.

[2] Judgments returned for Narragansett against the third-party defendant American Motors were vacated by the trial justice when he ordered a new trial for the defendant Narragansett in the case of each plaintiff. No appeal was taken from this action, but in its brief the defendant Narragansett prays that if its appeal is overruled, these judgments be reinstated.

and each defendant had moved for directed verdicts, all of which motions were denied by the trial justice. Subsequently, the trial justice granted the motions of defendant Narragansett for an unconditional new trial in each case. The court also granted the motions for a new trial of third-party defendant American Motors in the cases of Norma and Brenda, the minor plaintiffs, unless the plaintiff therein filed a remittitur of all of the verdict in excess of an amount prescribed by the court. Thereafter, the parties prosecuted appeals to this court.

It appears from the evidence that the minor plaintiffs were injured on July 7, 1964, while playing in the kitchen of their home. Brenda, then aged four, attempted to look into a pot atop the range, in which water was boiling, in order to ascertain what they would have for their supper. She testified that she had opened the oven door, which was a drop-type door, and that when it came to rest, she put her foot on the edge of the door with the intention of standing on it to look into the pot. As she put her weight upon the door, the range toppled over, trapping both Brenda and her sister, Norma, beneath it. At the same time the pot of boiling water scalded the two children.

It is not disputed that the range had been purchased in April, 1963, by the mother of plaintiff Bridget Ritter. It was delivered to the Ritter home by a contract hauler, authorized by defendant Narragansett, and was placed at a location in the kitchen where a prior range had also been located. The defendant Narragansett had purchased the range from third-party defendant American Motors, and it was received by Narragansett completely assembled. The only addition made to the range by Narragansett was a small electrical cord to be used to plug into an outlet in the wall.

According to the evidence, Narragansett received no instructions or directions from American Motors that the

range should be attached to the floor by screws or bolts or its stability increased by the addition of counterweights. According to the evidence, it was described by third-party defendant American Motors as a "free-standing" range, to wit, one that is not designed to be connected to the premises in which it is to be used but is to stand on its own base and be connected only by a cord inserted in an electrical outlet.

The plaintiffs' appeal in this court amounts to a twofold attack on the decision of the trial justice. They contend that he erred, first, in denying their respective motions for a directed verdict against each of the defendants and, second, in granting the motion of defendant Narragansett for a new trial in each case. The plaintiffs prosecuted no appeal in their cases against third-party defendant American Motors, having complied with the order of the trial justice and filed the remittiturs that had been ordered.

The defendant Narragansett in its direct appeal argues that the trial justice erred in denying its motion for a directed verdict in each case. Narragansett has also prosecuted a cross-appeal, in which it urges that the trial justice committed error of law during the course of the trial in several of his rulings. The third-party defendant American Motors, in prosecuting its appeal, contends that it was error for the trial justice to have denied its motion for a directed verdict against each plaintiff. It also contends that several rulings of the trial justice made during the trial constituted error of law for which a new trial should be granted. Perhaps the most significant contention of third-party defendant is that the trial justice committed reversible error in refusing to charge pursuant to its requests for instructions numbered 7 and 9. In these particular requests for instructions, third-party defendant asked that the jury be instructed that it would not be liable for injuries resulting from an abnormal use of the

range and that it was obligated to anticipate only that the range would be used for the purposes for which it was intended.

Turning, then, to the appeal of plaintiffs, it is clear that they seek primarily the adoption by this court of the rule of strict liability in tort in cases involving injury resulting from defective chattels. Their request numbered 8 for instruction closely paraphrases the rule of strict liability set out in Restatement (Second) *Torts* §402A (1965). The plaintiffs objected to this failure to instruct as requested and in their argument in this court press vigorously for the adoption by this court of the rule set out in the Restatement.

It is our opinion that the first question posed by this contention is whether these cases present an appropriate occasion for the adoption of the rule of strict liability in tort in products liability cases were we to so decide. While the appropriateness of a particular case to serve as a basis for the adoption of the widely accepted doctrine of strict liability is a matter which has many facets, there is in the instant cases a factor which persuades us to conclude that these cases are appropriate.

After an exhaustive study of the briefs, we are persuaded that in these cases the court properly ordered a new trial on defendant Narragansett's motion therefor in each case. We are of the opinion also that the court's refusal to instruct according to requests 7 and 9 of third-party defendant American Motors on the question of the relationship between the intended use of the chattel and the injury constituted an error of law and required that each case involving this defendant should have also been the subject of an order for a new trial.

In other words, it is our conclusion that if we pass upon the merits of these appeals in the posture in which they have been presented to us, all six cases would be remanded

182

to the Superior Court for a new trial. Without intending to extend this opinion unduly, we shall summarize our reasons for so believing that we have here an appropriate occasion for considering whether we should adopt the rule of strict liability set out in §402A of the Restatement.

In the first place, we are of the opinion that Narragansett's motion for a directed verdict in each case was properly denied. The real issue raised by the pleadings in this respect was whether Narragansett had been negligent by reason of a failure to have inspected or tested the range prior to sale to determine whether it was dangerous. The accepted rule of law set out in §401 of the Restatement is that one selling a chattel manufactured by another has an obligation to exercise reasonable care to inform the purchaser of the existence of a defect that would render the chattel dangerous in its intended use when the seller " * * * knows or has reason to know that the chattel is, or is likely to be, dangerous when used * * *." In short, the failure on the part of such a seller to inspect and test the chattel for defects constitutes actionable negligence if he knew or had reason to know that it was dangerous or likely to be dangerous. If the seller does not know nor have reason to know that it is, or is likely to be, dangerous, he is not liable in an action for negligence for harm caused by the dangerous condition of the chattel because of his failure to discover the danger by an inspection or test before the sale. Restatement (Second) *Torts* §402 (1965).

In our opinion, the evidence here established that defendant Narragansett was acting as a retailer in the sale of ranges manufactured by third-party defendant American Motors for some period of time. It uncrated and inspected such ranges for exterior damage, displayed them for sale, and had full control and custody over them until the sale. It was further established that available among their employees were experienced salesmen and

engineers and others who, a jury could find, knew or had "reason to know" that the chattel is likely to be dangerous when used. (§402) It is important to note that the phrase "reason to know" means that the defendant or its agents or servants had information from which a person of reasonable intelligence or of the superior intelligence of the defendant or its agents or servants would infer that the chattel would be dangerous to a user and that such a person would govern his conduct upon the assumption that the chattel was in fact dangerous.

On a motion for a directed verdict, it is well settled that the evidence adduced and the reasonable inferences to be drawn therefrom must be construed in a light most favorable to the plaintiff and the motion should not be granted unless the only reasonable inference that can be made is against the plaintiff. *Walsh* v. *DiNitto,* 107 R. I. 356, 267 A.2d 714 (1970). Applying this test to the evidence to which we have just referred and which was adduced in this case, it is our opinion that there was a jury question as to whether defendant Narragansett had reason to know that the chattel would be dangerous to a user, and we, therefore, conclude that Narragansett's motion for direction was properly denied.

On the other hand, it is our opinion that the action of the trial justice in granting Narragansett a new trial in each case must be sustained by this court. The transcript discloses that the trial justice stated, when considering these motions for new trials, that the evidence was fresh in his mind. It is true that he did not disclose with the desirable clarity that he had passed upon the weight of the evidence and the credibility of the witnesses in an exercise of his independent judgment. He did state, however, considering these motions, that the primary issue on the negligence of Narragansett was whether it knew or had reason to know

when it purchased the range and put it on the market that it was defective in any manner.

The trial justice had concluded quite obviously that fundamentally the liability of Narragansett turned on whether there was credible evidence that it knew or had reason to know of the defective design of the range and, therefore, was negligent in failing to test or inspect the range prior to the sale thereof. He specifically stated that in his view there was little or no credible evidence in the record from which the jury could find the existence of such knowledge on the part of Narragansett. In all the circumstances we are constrained to conclude that the trial justice did not overlook or misconceive any material evidence on this issue and, therefore, cannot be held to have been clearly wrong in granting the motions for new trials. We find, therefore, that there was no error in granting Narragansett's motion for a new trial in each case.

Turning to third-party defendant American Motors, we conclude that its motions for directed verdicts were properly denied. The third-party defendant in each of these cases rested these motions almost entirely on its contention that the use being made of the oven door by the minor plaintiffs was an abnormal or unintended use, which operated to relieve it of liability as a matter of law.

However, as the trial justice noted, there was evidence in the record concerning the long experience of third-party defendant in the construction of ranges of this type and design. There was also evidence that when the oven door opened and dropped into position, it permitted users of the range to rest heavy objects thereon. He further pointed to the evidence that when weights of approximately 30 pounds or more were placed upon the door, the range was so designed that it would tip forward. There was no evidence that third-party defendant had warned potential users of the range of this defect in design or informed such

users of the danger which could result from the resting of weighty objects on the oven door when it was open. He concluded that the jury could find from this evidence that third-party defendant knew that as a result of the design of the range the danger in the use of the oven door as a shelf was foreseeable and that the jury could have found that it had been negligent in failing to give notice or warning that such a condition would result from such a use of the oven door. We agree and hold that the motions for direction were properly denied.

However, it is clear that a jury could find that the use being made by plaintiffs had been an abnormal or improper use of the range or other than that for which it was intended. In this state of the record the question of improper or use other than the intended use was an issue. The record discloses that third-party defendant had requested instructions, to wit, 7 and 9, that the jury be instructed that if it found an improper or abnormal use or a use being made of the range for which it had not been intended, third-party defendant was relieved of liability for the injuries despite the defect in design. It is equally clear from the record that these instructions were not given and that objection was made to the court's failure to so instruct. We think that it was error on the part of the trial court to have failed to so instruct.

In *Richard* v. *H. P. Hood & Sons, Inc.,* 104 R. I. 267, 243 A.2d 910 (1968), the plaintiff was injured while attempting to remove a paper cap from a milk bottle by twisting it. The jury returned a verdict in favor of the defendant on counts in negligence and breach of implied warranty, respectively. The trial justice charged at some length on the question of the contributory negligence of the plaintiff barring his right to recover. In this court the plaintiff challenged the instruction of the trial court as being confusing and misleading. We there adopted the

proposition stated by Prosser in 50 Minn. L. Rev. 791 at 840, where the learned text writer says: "It is always possible that the plaintiff's negligence may consist of an abnormal use of the product, and whether there is discovery of the danger or not, the recovery may be barred on that ground."

On that basis this court held that a charge that the jury was to examine the evidence to determine if the plaintiff himself was in the exercise of due care as he took the bottle from the refrigerator and opened it and whether or not his conduct was that of an ordinarily prudent person was ambiguous and uncertain. We there stated that the court should have instructed the jury "* * * that recovery should be denied if they found that twisting the cap of the milk bottle constituted an abnormal use of the product." We are of the opinion, then, that it was error in the instant case to refuse to charge as requested with respect to the abnormal or improper use of the range or its use in a manner not intended by its manufacturer. It is our conclusion, then, that all of these cases are to be remanded to the Superior Court for new trials.[3]

Ordinarily these cases would be remanded for new trials on the issue of negligence. We have, however, been confronted with plaintiffs' request that this court specifically adopt the doctrine of strict liability in tort to recover for

---

[3]The defendants in each case raise the defense of lack of privity. In *Rampone v. Wanskuck Buildings, Inc.,* 102 R. I. 30, 227 A.2d 586 (1967), we held that lack of privity did not bar recovery by the plaintiff, an employee of a tenant, for injuries sustained by reason of the landlord's negligent failure to make repairs pursuant to an agreement to so do with the tenant-employer. We now extend this abandonment of the requirement of privity to cases resulting from injuries sustained by a user or consumer of a product rendered dangerous for such use by reason of the negligence of the producer or distributor thereof in its design, manufacture, preparation, or packaging.

injuries sustained through the use of a defective chattel. The plaintiffs argue vigorously that we should adopt the doctrine of strict liability in tort, and the record discloses that they had requested an instruction to the jury that the doctrine of strict liability in tort had application. The court did not incorporate this requested instruction into its charge, and plaintiffs objected thereto.

After long consideration this court has concluded that the doctrine of strict liability in tort should become a part of the law of this state. In *Henry* v. *John W. Eshelman & Sons,* 99 R. I. 518, 209 A.2d 46 (1965), Mr. Justice Joslin, in a concurring opinion in which the present Chief Justice joined, indicated strongly that it was within the province of the court to judicially adopt the rule of strict liability in tort and to abandon the concept of privity at least in those cases where the action was based on negligence rather than the breach of implied warranty, recognizing that under the old common law an action for breach of warranty sounded in tort.

We accept the language of Mr. Justice Roberts of the Supreme Court of Pennsylvania set out in a concurring and dissenting opinion in *Miller* v. *Preitz,* 422 Pa. 383, 420, 221 A.2d 320, 339 (1966), as constituting sound reasoning for the adoption of the rule of strict liability in tort. Mr. Justice Roberts said: "Since the so-called warranty action originated in tort, it seems particularly appropriate that the requirement of privity, as a limitation on the scope of a seller's or manufacturer's absolute liability, should be finally discarded in cases involving personal injuries. While the doctrine may have had some utility in the past, by limiting the liability of sellers and manufacturers, new and different considerations now dictate the expansion of the class of persons entitled to be redressed for injuries caused by defective products without regard to fault. Thus, whether the defendant should be strictly liable for injuries

caused by a defective product is a question which cannot be determined by resort to doctrines of contract law, such as privity of contract, which developed in response to considerations for the most part not here relevant. The matter is solely one of policy and should be approached without the encumbrance that reference to contract law needlessly imposes. I am of the view that the issue has been properly resolved by the formulation contained in §402A of the Restatement 2d, Torts * * *." We are in agreement with the eminent jurist and feel that the adoption of §402A of the Restatement will well serve to promote the cause of justice in these cases. We, therefore, hold that these plantiffs may, if they deem such action necessary, amend their pleadings so as to state a claim for relief under the provisions of §402A of the Restatement.

Section 402A provides: "Special Liability of Seller of Product for Physical Harm to User or Consumer (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold. (2) The rule stated in Subsection (1) applies although (a) the seller has exercised all possible care in the preparation and sale of his product, and (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

It is generally accepted that §402A had its genesis in the doctrine of strict liability in tort formulated by former Chief Justice Traynor of the Supreme Court of California in *Greenman* v. *Yuba Power Products, Inc.,* 59 Cal.2d 57, 377 P.2d 897. Inasmuch as the former Chief Justice of California was an adviser and active in the formulation

of §402A of the Restatement, it is reasonable to assume that the rationale of *Greenman* would reflect the thinking underlying §402A.

In *Greenman, supra*, the court, speaking through the Chief Justice, said: "A manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being. Recognized first in the case of unwholesome food products, such liability has now been extended to a variety of other products that create as great or greater hazards if defective." *Id.* at 62, 377 P.2d at 900. The court further went on to note that "The purpose of such liability is to insure that the costs of injuries resulting from defective products are borne by the manufacturers that put such products on the market rather than by the injured persons who are powerless to protect themselves. * * * To establish the manufacturer's liability it was sufficient that plaintiff proved that he was injured while using the Shopsmith in a way it was intended to be used as a result of a defect in design and manufacture of which plaintiff was not aware that made the Shopsmith unsafe for its intended use."[4] *Id.* at 63-64, 377 P.2d at 901.

Later the court in *Vandermark* v. *Ford Motor Co.*, 61 Cal.2d 256, 391 P.2d 168 (1964), extended the concept of strict liability in tort for injuries resulting from a defectively designed product to the retailer selling the product. The court, in extending this strict liability, said at 262, 391 P.2d at 171: "Retailers like manufacturers are engaged in the business of distributing goods to the public. They are an integral part of the overall producing and marketing

---

[4]The defective device in this case was known as a Shopsmith, which was a combination power tool that could be used as a saw, drill, and wood lathe. It was purchased by the plaintiff's wife and given to him as a Christmas gift.

enterprise that should bear the cost of injuries resulting from defective products."

. While we do not intend to extend this opinion by any extensive discussion of all of the facets of the rule of strict liability in tort set out in §402A of the Restatement, it is clear from a study of *Greenman, supra,* that the concept of strict liability in tort contemplates, first, that there must be a defect in the design or manufacture which makes the product unsafe for its intended use, and, second, that liability does not attach unless the plaintiff was using the product in a way in which it was intended to be used when he was injured by it. Under that doctrine of strict liability in tort for defective design, it is immaterial whether the manufacturer was negligent in creating the design or exercised all reasonable care in the creation of the design. If a defect appears in the product in spite of all reasonable care exercised by the manufacturer, he is liable just the same. In other words, the thrust of *Greenman* was to relieve the plaintiff of the burden of proving that the defect in design or manufacture resulted from the negligence of the defendant.

We direct attention to the fact that §402A is accompanied in the Restatement (Second) of Torts by a comprehensive commentary as to its meaning and application. In such situation we do not believe it necessary to enter into any extended discussion of the application of the rule other than to direct attention primarily to comment (g), in which it is noted that the rule "* * * applies only where the product is, at the time it leaves the seller's hands, in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him. * * * The burden of proof that the product was in a defective condition at the time that it left the hands of the particular seller is upon the injured plaintiff; and unless evidence

can be produced which will support the conclusion that it was then defective, the burden is not sustained."

Assuming that the meaning to be attributed to the phrase "unreasonably dangerous" may generate considerable dispute, we direct attention to an opinion discussing the meaning of the term as it is set out in §402A. In *Drummond* v. *General Motors Corp.*, No. 771098, filed July 29, 1966, the Superior Court of California took the view that the phrase "unreasonably dangerous" is to be viewed as meaning that the defect in the product establishes a strong likelihood of injury to the user or consumer thereof. The court said: "The emphasis upon the likelihood of injury takes into account the consumer's or user's knowledge of danger. This approach seeks to protect the consumer or user who is unaware of the danger involved in the use of a product in a way it was intended to be used or in using the product in a normal manner. This approach does not protect the consumer who uses the product in a different way than that intended nor does it protect the consumer or user when he uses a product in a way in which he knows requires certain precautions be taken to make the product safe in such a use."

There is an abundance of authority, both decisional and textual, which supports the rule of strict liability in tort as formulated in §402A. Without intending to set forth an extended list of such authority, we do suggest that certain cases may be profitably examined by counsel working in this area. *O. S. Stapley Co.* v. *Miller*, 103 Ariz. 556, 447 P.2d 248 (1968); *Rossignol* v. *Danbury School of Aeronautics, Inc.*, 154 Conn. 549, 227 A.2d 418 (1967); *Garthwait* v. *Burgio*, 153 Conn. 284, 216 A.2d 189 (1965); *Miller* v. *Preitz*, 422 Pa. 383, 221 A.2d 320 (1966); *Webb* v. *Zern*, 422 Pa. 424, 220 A.2d 853 (1966); *Ford Motor Co.* v. *Lonon*, 217 Tenn. 400, 398 S.W.2d 240 (1966); *Dippel* v. *Sciano*, 37 Wis.2d 443, 155 N.W.2d 55 (1967).

It is our conclusion, then, that the rule stated in §402A of the Restatement (Second) of Torts may be invoked in cases of products liability in appropriate cases. We point out that the remedy is not exclusive and that actions to recover for injuries sustained in these cases by reason of negligence may also be initiated. In the instant case all six cases are being remanded for a new trial. In the event that the plaintiffs decide to seek recovery under the strict liability rule laid down in §402A they may amend their pleadings to state the allegations and proof necessary to warrant the recovery. *See Webb* v. *Zern, supra.*

The appeal of the plaintiff in each case in which The Narragansett Electric Company is the defendant is overruled, and the appeal of the third-party defendant American Motors Corporation in each case is sustained, and all cases are remanded forthwith to the Superior Court for a new trial.

*Pearlman & Pearlman, Alan H. Pearlman,* for plaintiffs.
*Keenan, Rice, Dolan & Reardon, John F. Dolan,* for defendant Narragansett Electric Company; *John G. Carroll,* for American Motors Sales Corporation and American Motors Corporation, defendants.