**METAL WINDOW PRODUCTS CO.,**
Appellant,

v.

**Judy A. MAGNUSEN, Appellee.**

No. 648.

Court of Civil Appeals of Texas,
Houston (14th Dist.).

Sept. 20, 1972.

Rehearing Denied Oct. 11, 1972.

George H. Vance, Kenneth Mahand, Vance & Brukner, Houston, for appellant.

Arthur Stamm, Houston, for appellee.

SAM D. JOHNSON, Justice.

This is a suit for damages for personal injuries sustained when plaintiff, the appellee here, collided with a sliding glass door allegedly manufactured by appellant Metal Window Products Company. Trial was to the court which rendered judgment for appellee. Appellee was awarded $4,000.00 in damages and $431.00 for medical expenses incurred. The court filed Findings of Fact, Conclusions of Law and Amended Conclusions of Law, predicating judgment on (1) negligence and (2) strict liability. Appellant now petitions this Court in an effort to overturn the judgment of the trial court.

As originally filed there were two additional defendants, these being Lincoln Property Company and Jetero Construction Company. These are defendants who might stand in the position of builders, contractors, architects, owners or occupiers. However, prior to trial and on plaintiff's motion, Lincoln Property Company was dismissed with prejudice. During trial, again on plaintiff's motion, a nonsuit was taken as to Jetero Construction Company. The instant action, therefore, is *not* one against an owner, occupier, architect, contractor, builder or any one standing in any such similar capacity. This case involves solely the liability, if any, of the manufacturer of the sliding glass door in question.

On March 13, 1971, appellee attended a cookout at an apartment in the same apartment complex in which she lived. She arrived at the apartment at approximately 5:00 p. m., while the sun was still shining. The sliding glass door in question constituted the rear entrance to the apartment, and when appellee first arrived the door was already open. Appellee testified that during the succeeding hour she traveled through the doorway several times and on each occasion the glass door was open. At approximately 6:15 p. m. appellee approached the doorway to reenter the apartment, unaware that the door had been closed. A light was on within and appellee testified that she could see the breakfast area and various objects in the kitchen beyond very distinctly. As she attempted to pass through the doorway appellee struck the glass door, bruising her face and damaging her front teeth. The glass door did not break, shatter or fracture at the impact.

Appellee testified that at the time of the accident it was still light and that she had consumed one gin and tonic beverage and had just begun a second one. The glass door with which she collided was a solid sheet of glass consisting of no other materials except an aluminum rim about the perimeter which contained a vertical handle on one side approximately ten inches in length. The handle was of average height from the floor and was built into the aluminum rim which surrounds the glass. The glass bore no decal or sticker and was not equipped or crossed with a bar or any other similar type of device to warn of its presence when closed. The glass sheet in the door was no wider than thirty inches. The sliding glass door in question would appear to be one of common usage and design for homes and apartments.

Trial was to the court without the intervention of a jury. On request of the defendant the trial court made Findings of Fact and Conclusions of Law. In its Conclusions of Law the trial court determined (1) that defendant placed the glass door in question upon the market in a defective condition, rendering it unsafe for its intended use; (2) that it was defective because it failed to incorporate warning decals or bars of any kind; (3) that such defective condition caused the door to be unreasonably dangerous; (4) that such defective condition was a proximate cause of plaintiff's injuries; (5) that plaintiff was negligent upon the occasion in question; (6) that defendant failed to establish by a

preponderance of the evidence the defense of open and obvious condition (no duty); (7) that defendant failed to establish by a preponderance of the evidence the defense of volenti non fit injuria; (8) that defendant was negligent in failing to incorporate warning decals or metal bars on the door; (9) that such negligence violated a duty of care owed to the plaintiff as a potential user of the door; (10) that such negligence was a proximate cause of plaintiff's injuries; and (11) that the court's judgment was based upon the defendant's negligence (Conclusions 8, 9, and 10) in addition to being based on the doctrine of strict liability. There is no conclusion of law regarding whether plaintiff's own negligence was a proximate cause of her injuries.

Appellant now urges seven points of error in support of its effort to secure a reversal. These points attack the evidentiary basis for the trial court's holding on strict liability, the evidentiary basis for the trial court's holding on negligence, the holdings as to "no duty" and to affirmative defenses, the excessiveness of the award, the holding that plaintiff's dental expenses were necessary, the finding as a fact that the defendant was the supplier of the glass door in question, and the trial court's reopening the evidence after first having announced a decision in the case.

As a preliminary matter, we hold that the trial court's action in reopening the evidence under the circumstances of the instant case represented no abuse of discretion. Rule 270, Texas Rules of Civil Procedure. Further, the contention that the defendant was not shown to be the supplier of the particular sliding glass door in question is also overruled.

Appellee's first basis upon which to sustain recovery is the theory of strict liability. Restatement (Second) of Torts sec. 402A (1965) holds a seller of an unreasonably dangerous defective product liable for injuries "thereby caused" to a user of that product if (1) the seller is engaged in the business of selling such a product, and (2) the product is expected to and does reach the user without substantial change. It is now settled that any person sustaining injury because of the defective condition may take advantage of sec. 402A. Darryl v. Ford Motor Company, 440 S.W.2d 630 (Tex.Sup.1969). It is not disputed that the defendant in the instant case was in the business of selling sliding glass doors and the only evidence in the record relating to the condition of the glass door in question at the time of sale indicates that it was unchanged at the time of plaintiff's accident. Defendant does not suggest that material change had occurred. (It is true that the door probably had paper stickers or labels affixed to it upon sale by the defendant but these were to identify the manufacturer and were intended to be removed upon use.)

■ The principal question to be answered is whether the glass door in question is a " . . . product in a defective condition unreasonably dangerous to the user . . . ". This terminology contains two requisite elements plaintiff must establish in defendant's product, i. e., (1) a defect, and (2) unreasonable danger.

The alleged defect in the plain glass sliding door, such as involved here, is the absence of a permanent and recognizable object or substance in, on, or across the glass designed to call its presence to the attention of persons approaching it while it is in a closed position. Plaintiff suggests that this might consist of a bar across the glass, a permanent decal applied to its exterior or an etching constructed in the glass itself. We are therefore called to determine, first, whether the absence of such warning indicators is a defect in the door, and second, whether that defect, if any, elevates the degree of danger implicit in the door to an "unreasonable" level.

It is true that a transparent glass door, because of the illusion of space it maintains even when closed, represents a degree

of danger that persons will collide with it. Given the widespread use of such doors and the large number of injuries resulting annually from collisions with them, it is proper to expect a manufacturer to anticipate that some users might fail to see a closed door and walk into it. But glass doors are purposely designed without bars, etchings or decals. "Indoor-outdoor living, the 'gracious and spacious' concept, and the desire for a 'view' have lead to widespread use of clear transparent glass panels in . . . construction . . . . Doors, once considered as providing merely a means of ingress and egress, are now regarded as sources of light and ventilation, and as a means of adding 'size' to a room." 14 Am.Jur. Trials, Glass Door Accidents sec. 1 (1968). Markings on the door would, to whatever degree they can be observed, detract from the illusion literally millions of persons seek, and apparently upon which they insist. The virtual invisibility now complained of is the very quality which gives desirability and value to glass doors. Interestingly that quality, invisibility, is the *only* feature complained of in the instant situation.

Restatement (Second) of Torts sec. 402A (1965), in discussing the notion of "defects", limits the application of that section to products which are "in a condition not contemplated by the ultimate consumer". It is difficult to say that the absence of a marking on the door in question left the door in a condition not contemplated by an average user. Especially is this so with this plaintiff who was familiar with plain sliding glass doors, was familiar with those in this apartment complex and knew that they seldom bear markings not installed by the owner or occupier of the premises.

Even if it is assumed that the absence of warning indicators rendered this particular glass door defective, it must also be determined whether the danger it posed was unreasonable. We are concerned with a door which did not break or shatter upon impact and this fact must be borne in mind when considering the reasonableness of the danger involved. In other words, it is not only the possibility of collision with the transparent door, but also the severity of resulting injuries which constitute the degree of danger posed. Plaintiff's injuries were substantially less severe than those generally suffered by persons who crash through glass doors or who are cut by shattered or broken glass. It is to be recalled that the glass door here withstood the impact and did not break, shatter or fracture.

Further, given the popularity and general acceptance of clear glass doors, it must be considered doubtful that the risk of collision without breakage due to the transparency involved outweighs the utility and value such doors have attained. In the commentary from Am.Jur. Trials quoted above, it is concluded that a product is probably unreasonably dangerous if it " . . . presents a greater risk of harm than the reasonable 'user' should expect . . . ". This has support in comment "i" to the Restatement. In light of the extensive use of glass doors and common knowledge as to the possibility and frequent occurrence of collisions with them, a reasonable user must be held to appreciate the risk inherent in them. The danger posed is not a hidden or latent one but on the contrary, is perceptible. The fact that glass can be invisible is itself the clue to the public that glass doors are a potential hazard.

The door was located where a door would normally be positioned. The glass sheet which it contained was no wider than two and one-half feet. It was framed with strips of aluminum two inches wide on the sides and three inches wide on the top and bottom. A handle ten inches in length was mounted on one of the side strips at approximately waist height. On a sunny evening the glass pane casts quite noticea-

ble reflections. Plaintiff testified that she rose from steps on the rear edge of the small patio area skirting the glass door, turned and walked toward the entrance. She testified that even though the reflections in the glass door may have been apparent, they did not register to her. From her position on the patio the door handle, the aluminum frame and in particular the bottom expanse of the aluminum frame were readily apparent, even if the light from the lamp within vitiated the effect of reflections on the glass. We cannot say a glass door located as it was, noticeable as it was and which did not cause injury by breaking, is an unreasonable danger.

Attempted application of the strict liability theory to glass door collision cases is unique. We have been directed to no authority and have found no case where the defendant is the manufacturer and this theory has been invoked. The case of Brizendine v. Visador Company, 305 F. Supp. 157 (D.Or.1969) urged by appellee is clearly distinguishable. That case involved not a glass door, but a light fixture containing a pane of glass only ten inches by ten inches in size. It was accidentally struck and shattered by a second person and slivers of glass lodged in plaintiff's eye. The complaint centered about the fragility of the broken glass in the light.

Owners and occupiers, of course, are in a somewhat different position from manufacturers. They may take necessary precautions against foreseeable or anticipated collisions in their particular situations. In the instant case such an individual could have, for instance, placed a marking or decal on the glass to make it apparent to anyone approaching the door. That, in fact, seems to have been the general pattern in the apartment complex where the plaintiff resided. Appellee herself testified that most apartments' glass doors with which she was familiar had some mode of warning device mounted on the glass,

usually a decal. But these, she surmised, were applied by either landlord or tenants.

In short, we do not think a *manufacturer* may be held strictly liable for this type of injury, one resulting from risks such as have been described which are virtually as well known to users as to the manufacturer. Had the glass door in question broken or shattered and cut plaintiff we would be faced with a different element and a possible defect, i. e., the fragility of the glass. There a question might arise regarding the propriety of using glass of that character in such a door.

■ We next consider the trial court's judgment based upon the theory of the defendant's negligence. The trial court held, as has been indicated, that the defendant was negligent in failing to incorporate warning decals or metal bars on the door, that such negligence violated a duty of care owed to the plaintiff as a potential user and that such negligence was a proximate cause of plaintiff's injuries. Defendant's duty is spelled out in the Restatement (Second) of Torts sec. 298 (1965).

That provision requires an assembler to employ " . . . the care . . . which a reasonable man in his position, with his information and competence, would recognize as necessary to prevent (his) act from creating an unreasonable risk of harm to another." . (parenthesis added) It is obvious that a door of clear glass represents some risk of harm to anyone approaching it. Section 291 outlines the test of unreasonableness of that risk. It declares the risk unreasonable (and the assembly of such a door negligent) " . . . if the risk is of such magnitude as to outweigh what the law regards as the utility of the act . . . ". Later sections articulate tests for assessing utility and the magnitude of the risk.

The foregoing discussion under the strict liability issue reveals that significant social

value is attached to glass doors, even though it is not unlikely that some fractional number of persons will strike them in the belief that they are entering an open doorway. The number of persons who collide with glass doors annually is, as has been stated, substantial. Nonetheless, it is also true that the door in question did not break and appellee's injuries were relatively minor, that is, in comparison with injuries received when glass breaks or shatters. Weighing all these factors against the utility attached to glass doors of this type—that is—doors which perform the very function for which they are designed, we do not believe it can be concluded that the defendant created a risk which can be said to be "of great magnitude."

Conversely, unmarked glass doors, as noted before, are in demand and defendant produced a door in direct response to that demand. To require it to manufacture its products with a permanent decal, an etching or a bar would be to require what public choice has dictated be designed out of doors. Such a holding, to follow the benchmarks of section 292 of the Restatement, would hinder and not advance the cause of unmarred visibility in glass doors, an interest that could not otherwise be served if some marking were required. Thus, the utility of appellant's design seems to be substantial. The contrast between the relatively small risk and the rather significant utility renders the risk of harm inherent in the door marketed by appellant less than an unreasonable one. Appellant thus was not negligent in producing and vending that door—it cannot be said to have employed less than reasonable care.

In view of our holding that plaintiff may recover neither on the basis of negligence nor on strict liability, we do not pass on those points relating to damages. The judgment of the trial court must be reversed and judgment here rendered that appellee take nothing.