**Kenneth F. JACKSON**

v.

**CORNING GLASS WORKS.**

No. 86–354–A.

Supreme Court of Rhode Island.

March 9, 1988.

Edmond A. DiSandro, DiSandro-Smith & Associates, P.C., Providence, for plaintiff.

Kenneth P. Borden, Higgins, Cavanagh & Cooney, Providence, for defendant.

OPINION

WEISBERGER, Justice

This case comes before us on an appeal by the defendant, Corning Glass Works (Corning), from a judgment entered in the Superior Court in the amount of $804,-892.17 (including interest to the date of the judgment) in favor of the plaintiff, Kenneth F. Jackson, who had lost the sight in his right eye as a result of being struck by a shard of glass from a shattered Pyrex glass bowl cover manufactured by Corning. We reverse. The facts of the case insofar as pertinent to this appeal are as follows.

The plaintiff had purchased a number of Corning Ware bowls, which were equipped with Pyrex glass lids. The plaintiff's wife stacked these bowls on the second shelf of

plaintiff's kitchen cupboard. This cupboard was located above a kitchen counter adjacent to the sink. In all, eleven items of Corning Ware were stacked together with their Pyrex glass lids in the following fashion:

1. At the base of the stacked pyramid was a Corning Ware roasting pan.

2. Inside the roasting pan a rack was placed.

3. Inside the roaster on top of the rack was placed the next largest Corning Ware bowl, a 1½-quart-capacity bowl.

4. On top of this 1½-quart bowl was placed an inverted Pyrex glass cover, knob side down.

5. On top of the Pyrex glass cover was placed a 1-quart Corning Ware sauce bowl.

6. On top of the 1-quart sauce bowl was placed a second Pyrex glass cover, inverted, knob side down.

7. On top of the second Pyrex glass cover was placed the next size Corning Ware bowl, namely, a 2¾-cup petite bowl.

8. On top of the petite bowl was placed another inverted Pyrex glass cover.

9. On top of the Pyrex glass cover was placed a 1¾-cup bowl of Corning Ware.

10. Upon this 1¾-cup bowl of Corning Ware another inverted Pyrex glass cover was placed.

11. The final item of the pyramid stack was another 1¾-cup petite bowl, which rested on the inverted Pyrex glass cover immediately below.

This pyramidal stack of Corning Ware and inverted glass covers was placed upon the second shelf of the cupboard which was slightly tilted toward the floor. Running lengthwise on the shelf, near the rear thereof, was a small ridge, which was probably designed for the purpose of allowing the upright placement of one or more plates at the back of the cupboard. The shelf was approximately five feet ten inches above the floor. The roasting pan that had been placed at the bottom of the pyramid extended slightly beyond the edge of the shelf. Depending upon its placement, the cupboard door could come in contact with this roasting pan when closed.

On January 13, 1979, plaintiff closed the door of the cupboard. The plaintiff's expert assumed that this action caused the door to come in contact with the roaster pan. The roaster pan was then nudged up over the ridge at the rear of the cupboard. Thereupon, the stack reacted by falling out of the cupboard. The plaintiff, upon hearing the noise of glass on glass, looked toward the glass door of the cupboard and saw the Corning bowls and glass lids toppling down. He saw them strike the counter and then the slate floor. Almost simultaneously his right eye was struck by a shard of glass from one of the Pyrex glass lids. As a result plaintiff lost the sight in his right eye.

At trial plaintiff introduced evidence that Corning's brochure had shown Corning Ware stacked in a fashion similar to that used by plaintiff and plaintiff's wife and that there was no warning against stacking such Corning Ware. He also introduced expert testimony by Dr. Louis L. Bucciarelli, an associate professor of engineering at the Massachusetts Institute of Technology, and Dr. Thomas B. Sheridan, also a professor of engineering at the Massachusetts Institute of Technology, both of whom testified that the pyramidal stacking of Corning Ware was unstable so that the application of lateral force to the stack would cause it to topple over, particularly in the circumstances under which this Corning Ware was stacked upon the shelf in question. Doctor Bucciarelli was of the opinion that the design of the lids was defective in that the placing of the bowls upon the lids did not provide a stable base for stacking and, therefore, the pyramid would topple upon the application of lateral force.

At the close of the evidence in the case, Corning moved for a directed verdict upon all counts of the complaint. The trial justice granted defendant's motion in regard to all counts save the seventh, which alleged strict liability. The case was submitted to the jury on this count, and the jury returned a verdict in favor of plaintiff in the amount of $1,263,567. The jury also

found in answer to a specific interrogatory that plaintiff was 65 percent responsible for his own injury. The verdict was then reduced by this percentage to the amount of $442,248.45. To the reduced verdict interest was added that resulted in a judgment in the amount of $804,892.17.

The defendant raises a number of issues in support of its appeal. We shall consider only the issue which asserts that Corning was entitled to a directed verdict on the ground that its products were not unreasonably dangerous.

## MOTION FOR DIRECTED VERDICT

At the close of all the evidence, Corning moved for a directed verdict, asserting several grounds therefor. One of the grounds for the motion was that the Corning Ware products were not unreasonably dangerous. We are of the opinion that this ground for a directed verdict should have been dispositive and required the granting of such motion.

In passing upon a motion for directed verdict, this court, as the trial justice, must consider all the evidence introduced by both parties in the light most favorable to the party against whom such motion is directed. That party must be given the benefit of all reasonable and legitimate inferences that may properly be drawn from the evidence. This consideration must be given without reference to the court's opinion in regard to weight of evidence or credibility of witnesses. In the event that the trial justice or this court should determine that issues exist upon which reasonable minds could differ, then the case should be submitted to the jury to resolve such issues of fact. *See, e.g., Cardi v. Amoriggi Sea Foods, Inc.*, 468 A.2d 1223, 1226 (R.I.1984); *Montuori v. Narragansett Electric Co.*, 418 A.2d 5, 9 (R.I.1980); *Evans v. Liguori*, 118 R.I. 389, 394, 374 A.2d 774, 776 (1977). Nevertheless, if a motion for directed verdict is made at the close of all the evidence, the trial justice must direct a verdict in favor of the defendant if the evidence is insufficient as a matter of law to justify recovery on the part of the plaintiff. *Mar-*

*shall v. Tomaselli*, 118 R.I. 190, 372 A.2d 1280 (1977).

In determining whether there were issues of fact to be submitted to a jury, we must consider the contextual legal framework that governs a complaint for strict liability based upon an allegedly defective product. The seminal case in which this court adopted the concept of strict liability in tort was *Ritter v. Narragansett Electric Co.*, 109 R.I. 176, 283 A.2d 255 (1971). In that case, we cited with approval § 402(A) of the Restatement (Second) of *Torts* and particularly comment (g), in which we noted that the rule " 'applies only where the product is, at the time it leaves the seller's hands, in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him.' " *Id.* at 190, 283 A.2d at 262. The court went on in *Ritter* to suggest a definition of the phrase "unreasonably dangerous." This definition, which was attributed to a trial justice in the state of California in a case entitled *Drummond v. General Motors Corp.*, was set forth in *Ritter* as follows:

"[T]he phrase 'unreasonably dangerous' is to be viewed as meaning that the defect in the product establishes a strong likelihood of injury to the user or consumer thereof. * * * 'The emphasis upon the likelihood of injury takes into account the consumer's or user's knowledge of danger. This approach seeks to protect the consumer or user who is unaware of the danger involved in the use of a product in a way it was intended to be used or in using the product in a normal manner. This approach does not protect the consumer who uses the product in a different way than that intended nor does it protect the consumer or user when he uses a product in a way in which he knows requires certain precautions be taken to make the product safe in such a use.' " 109 R.I. at 191, 283 A.2d at 263.

Applying this definition of unreasonably dangerous to the evidence in this case leads to only one reasonable conclusion. It is undisputed that the eleven-item pyramid of Corning Ware and Pyrex lids was placed upon a shelf that was not quite

level, that this shelf included a ½-inch ridge at the rear of the cupboard, and that the bottom roaster pan may well have protruded slightly beyond the edge of the shelf. It is also undisputed that no expert either for plaintiff or for defendant had any knowledge, other than the most speculative assumption, of the quantum of force that was placed against the pyramid by the closing of the glass doors to the cupboard. There is no evidence concerning any alternative design that would have made this pyramid safe in the circumstances in which it had been created by plaintiff's wife. Most compelling, however, is the undisputed and well-known fact that cookware and glass lids will break if they fall upon a hard surface like a slate floor. It is also well known to any reasonable consumer or owner that a pyramid of dishes or cookware, particularly eleven items high, may be susceptible of toppling if a lateral force is directed against it.

To permit a trier of fact to determine upon the evidence presented in this case that the design of the Pyrex lids was so defective as to be unreasonably dangerous to a consumer is erroneous as a matter of law. The vague and speculative testimony given by plaintiff's experts concerning the stability of a pyramidal stack that neither of them had ever seen and which toppled in circumstances of which at best they had only a dim perception did not create a genuine issue of fact to be submitted to a jury.

This case bears some analogy to the case of *Metal Window Products Co. v. Magnusen*, 485 S.W. 2d 355 (Tex.Civ.App.1972), in which a plaintiff complained of personal injury she received when she collided with a sliding glass door when she attempted to enter a house from an outside patio. In support of her claim for strict liability, she contended that the failure to place decals on the door rendered it invisible and therefore defective. The Texas Court of Civil Appeals, holding that the absence of decals on the door did not render the door dangerous or unreasonably defective, commented:

"In light of the extensive use of glass doors and common knowledge as to the possibility and frequent occurrence of collisions with them, a reasonable user must be held to appreciate the risk inherent in them. The danger posed is not a hidden or latent one but on the contrary, is perceptible. The fact that glass can be invisible is itself the clue to the public that glass doors are a potential hazard." *Id.* at 358.

We consider it even more obvious that a consumer or user should be aware of the potential hazards of stacking glass or cookware objects in a pyramid as described in the case at bar. Such a hazard ought to be well known to the average consumer, who would be aware of the patent dangers of such a stacking operation and would therefore be charged with the necessity of taking suitable precautions to ensure the stability of the pyramid and to guard against the application of lateral force. There is, in the case at bar, no evidence that would support the proposition that a manufacturer of cookware and Pyrex glass lids could have anticipated such a use and guarded against it in any manner that would have been either feasible or practicable.

Therefore, we conclude that the trial justice was in error in failing to grant a directed verdict with reference to count 7, which alleged strict liability in the case at bar. This holding makes it unnecessary for us to consider the defendant's challenges to the ruling based upon absence of evidence of proximate cause or any of the other challenges raised to various rulings by the trial justice in matters of evidence and of his denial of the motion for a new trial.

For the reasons stated, the defendant's appeal is sustained. The judgment of the Superior Court is reversed, and the papers in the case may be remanded to the Superior Court with directions to enter a judgment in favor of the defendant, Corning.

KELLEHER, J., did not participate.