William SIMMONS

v.

LINCOLN ELECTRIC COMPANY.

No. 95–718–Appeal.

Supreme Court of Rhode Island.

May 27, 1997.

Aram R. Schefrin, Merrill J. Friedemann, Providence, for Plaintiff.

Patricia A. Buckley, Keith B. Kyle, Providence, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER and FLANDERS, JJ.

## OPINION

FLANDERS, Justice.

This product-liability case concerns the sufficiency of evidence offered by an injured plaintiff to show that a welding machine was negligently designed or otherwise defective when it was sold to the plaintiff's employer.

The defendant-manufacturer, Lincoln Electric Company (Lincoln), appeals from the granting of a new-trial motion filed by plaintiff-employee, William Simmons (Simmons), following a jury verdict entered in Lincoln's favor. Simmons injured himself at work while operating an electrically powered welding machine manufactured by Lincoln.

On appeal Lincoln argues that the trial justice erred by (1) denying its motion for a directed verdict[1] at the close of all the evidence and (2) granting Simmons's motion for a new trial. Because we conclude that Lincoln's motion for a directed verdict should have been granted at the close of the evidence in the case, we sustain its appeal and remand this matter so that judgment can be entered for Lincoln.[2]

## Background

Simmons worked as a welder for General Dynamics Corporation's Electric Boat Division (Electric Boat) at its Quonset Point, Rhode Island, plant. During the midafternoon hours of November 7, 1983, Simmons was welding pipes at the plant's station No. 3, using a submerged arc, electrically powered welding machine that Lincoln sold to Electric Boat in 1975. Like other employees who work with electricity, Simmons had donned rubber-soled work boots and leather gloves with cotton inner linings before he wielded the welder. But he also wore a metal watch on his left wrist. As Simmons neared the end of his weld, he reached with his left hand to flip a switch. In the course of doing so, Simmons's watch slipped out from beneath his leather glove. When the watch brushed against two metal flanges on the welding machine, it completed an electrical circuit and welded itself to the flanges, thereby injuring Simmons.

Simmons filed a complaint against Lincoln in Superior Court, alleging product liability, negligence, res ipsa loquitur, and breach of express and implied warranties. Following the close of Simmons's case in chief, Lincoln argued in part that Simmons had failed to satisfy his burden of proving that the welding machine was defective when it was sold to Electric Boat, and it therefore requested that a verdict be directed in its favor. The trial justice granted Lincoln's motion with respect to the res ipsa loquitur claim and five of the six negligence counts, but denied it as to the product liability, breach of express and implied warranties, and negligent design counts. At the close of its defense Lincoln moved for a directed verdict on the remaining counts, which the trial justice denied. After deliberating on these remaining counts, the jury returned a general verdict for Lincoln, but it also returned seemingly contradictory answers to specific interrogatories submitted by the trial justice.[3] Unable to harmonize the jury's answers to the specific interrogatories with the jury's general verdict, the trial justice granted Simmons's motion for a new trial, from which Lincoln appealed.

## Standard of Review

When presented with a directed-verdict motion, the trial justice, and this court on review, should consider the evidence in the light most favorable to the nonmoving party, without weighing the evidence or evaluating the credibility of witnesses, and all reasonable inferences should be drawn to support the position of the nonmoving party. *DeChristofaro v. Machala,* 685 A.2d 258, 262 (R.I.1996). If after such a review factual issues remain upon which reasonable minds might differ, the issues must be submitted to the jury for determination. *Id.* However, "[a] verdict should be directed when the evidence permits only one legitimate conclusion in regard to the outcome." *Long v. Atlantic PBS, Inc.,* 681 A.2d 249, 252 (R.I.1996).

## Analysis

In allowing this case to go to the jury, the trial justice necessarily determined that reasonable minds could differ concerning the sufficiency of the evidence presented by Simmons against Lincoln on his claims for prod-

---

1. The motion for a directed verdict is now referred to as a motion for judgment as a matter of law. *See* Super. R. Civ. P. 50.

2. Given this disposition, we do not review the granting of the new-trial motion.

3. The relevant portion of jury question No. 1 read, "Do you find * * * the product was at the time of injury in the same condition as manufac-

tured or sold without substantial change or alteration at the time of Mr. Simmons' injury?" To this question the jury answered, "Yes." In contrast, question No. 5 read, "Was the Lincoln Electric LAF–3 on which plaintiff was injured on November 7, 1983 substantially altered and was this substantial alteration a cause of his injuries?" This question was also answered in the affirmative.

uct liability, negligent design, and breach of express and implied warranties. Although these claims provide separate theories for recovery, the elements for each claim have some overlap. For each, Simmons had to prove that a defect attributable to Lincoln was the proximate cause of Simmons's injury. *See Thomas v. Amway Corp.*, 488 A.2d 716, 721–22 (R.I.1985) (negligent design and product liability); *Plouffe v. Goodyear Tire & Rubber Co.*, 118 R.I. 288, 294, 373 A.2d 492, 495 (1977) (breach of warranty); *Ritter v. Narragansett Electric Co.*, 109 R.I. 176, 182, 189–91, 283 A.2d 255, 258, 262–63 (1971) (negligent design and product liability).

■ Although the evidence introduced at trial could support a finding that some sort of defect existed at the time of the accident that caused Simmons's injury, any such defect could have been caused by post-delivery alterations or causes other than design defects attributable to Lincoln. Thus the key evidentiary issues at trial were whether Lincoln sold a defective welding machine to Electric Boat in 1975, and if so, whether the defect caused Simmons's injury.

Simmons refers us to the testimony of his expert witness, Richard A. Fain (Fain), and claims that this evidence satisfied his burden of proof on these issues. Fain testified that the welding machine was defective when it was delivered to Electric Boat and that this defect was the proximate cause of Simmons's injury. Thus, Simmons argues, Fain's testimony conclusively supports the trial justice's decision to deny Lincoln's motion for a directed verdict and to submit this case to the jury. We disagree.

To survive Lincoln's directed-verdict motion, Simmons had the burden of introducing evidence showing that the welding machine was defective when it left Lincoln's control in 1975 and not just when Simmons was injured in 1983. *See Thomas*, 488 A.2d at 721–22; *Plouffe*, 118 R.I. at 294, 373 A.2d at 495. However, after a careful review of the testimony and trial exhibits introduced in support of Simmons's case, we are unable to discern any evidence that would enable a reasonable jury to conclude that a defect existed when the welding machine was delivered to Electric Boat in 1975.

During Simmons's case in chief, several witnesses testified about various details of the events leading up to Simmons's injury, but no competent evidence was introduced concerning the vital question of the welding machine's condition when it left Lincoln's possession and was delivered to Electric Boat. In fact, many of Simmons's witnesses lacked the personal knowledge necessary to answer this critical question since they were neither Lincoln nor Electric Boat employees when Lincoln manufactured and sold the welding machine. And the witnesses who were physically present at Electric Boat in 1975 admitted that they could not testify about the condition of the welding machine when it was received and installed.

Our independent review of the record reveals only one portion of the evidence that is worthy of further discussion on this point. Although far from a model of clarity, the relevant portion of the direct examination of Simmons's expert witness, Fain, is set forth below:

"Q  *I would like you to assume that * * * [t]he potential which was present to affix the watch to the portion of the machine as you see it in the photograph, was present on the machine from installation until November 7th, 1983?*

"A  Is that in the form of a question?

"Q  I haven't finished the question. Now, I've given you all the hypothetical parts.

"A  Okay.

"Q  Now comes the question. The question is can you state to a reasonable scientific certainty whether or not there was a defect in the K–20 [welding machine] when it left the factory of Lincoln Electric?

  "Mr. Kyle: I object.

  "The court: Overruled.

"A  There should not have been a potential any place but in the area where Murray has identified, and the area where the watch welded should not have had a voltage or a potential in it.

"Q  So let me ask you the question. I don't want to reask all the hypothetical question[s]. You assume all that. Can

you state to a reasonable degree of scientific certainty whether assuming all—including what you just said, that there was a defect inside the K–20 [welding machine] when shipped by Lincoln to [Electric Boat]?

"Mr. Kyle: I object.

"The court: Overruled.

"A Yes, sir." (Emphasis added.)

Despite Fain's affirmative response to this last question, there was no evidence adduced during this exchange from which a reasonable jury could determine that a defect existed in the welding machine when it was delivered. Not only were the questions posed to Fain hypothetical in the sense of assuming facts not in evidence but they were also circular. Before giving his opinion that a defect existed when the welding machine was shipped to Electric Boat, Fain was asked to assume that the welding machine's "potential" for carrying an electric charge at the point of contact with Simmons's watch was present from the time of its installation at Electric Boat. In other words, Fain was asked to assume that this defect existed in the welding machine when it was delivered and installed and then asked if he could state "to a reasonable degree of scientific certainty" whether that very defect was present when it was shipped by Lincoln to Electric Boat. In these circumstances Fain's affirmative response was meaningless, and the trial justice erred in permitting Fain to answer this question over Lincoln's objection, let alone in allowing the jury to consider Lincoln's liability on the basis of such a solecism. *See State v. Fogarty,* 433 A.2d 972, 977 (R.I. 1981) (" 'hypothetical question to an expert witness must embrace all the essential elements of the situation as they appeared in evidence' "). As Fain later admitted, he had no knowledge of the condition of Lincoln's welding machine in 1975 when it was shipped and delivered to Electric Boat.

"Q So then I take it because you don't know [how the welding machine was shipped by Lincoln to Electric Boat], you don't know if when it was sold and delivered by Lincoln Electric to Electric Boat it was in a defective condition, do you?

"A Not positively, no."

In addition to Fain's unhelpful testimony, Simmons relies upon the allegedly loose insulation found inside the welding machine as constituting a defective design because it could have been easily removed and thus have compromised the machine's safety. But Simmons failed to introduce any specific evidence of the existence of this alleged defect when the welder was delivered, and none can be inferred solely from the existence of this condition some eight years later.

■ To survive a motion for a directed verdict, Simmons had to introduce evidence to show that the welding machine was defective when it left Lincoln's hands and that any such defect was the proximate cause of his injuries. *Plouffe,* 118 R.I. at 295, 373 A.2d at 496. Here it is uncontradicted that a welding machine was installed in 1975 and used continuously by Electric Boat's employees for eight years without adverse incident until Simmons's injury on November 7, 1983. Other than Fain's being told by Simmons's lawyer to assume the existence of a defect (that is, the potential for electricity to flow at the point where Simmons's watch contacted the machine) when the welder was delivered to Electric Boat, there was no competent evidence concerning its condition at that time, nor was there any pertinent testimony concerning the condition of the machine in the eight years leading up to Simmons's injury. Indeed, it was not until 1989—six years after Simmons's injury and fourteen years after the welding machine left Lincoln's possession—that Simmons first inspected the machine. And any defects existing at that time were not necessarily ones that may have also existed when the welding machine was designed and delivered some fourteen years earlier. As we have stated in the past, because Simmons has the burden of establishing these elements, "the passage of time is likely to subject all but the most conclusive" of product-liability claims to a directed verdict. *Romano v. Westinghouse Electric Co.,* 114 R.I. 451, 462, 336 A.2d 555, 561 (1975). This inconclusive claim hardly falls into that narrow category.

After considering the evidence introduced by Simmons and the reasonable inferences to be drawn therefrom in the light most favorable to his case, we are of the opinion that no jury could have reasonably concluded, relying on the evidence introduced, that a defect existed in the welding machine when it was delivered to Electric Boat in 1975. Rather, only by indulging in pure speculation and conjecture could one suppose that it had been defective when it left Lincoln's control in 1975. Because Simmons failed to establish that any defect existed in the welding machine at that time, the trial justice should have granted Lincoln's motion for a directed verdict.

### Conclusion

Accordingly we sustain Lincoln's appeal and remand the papers in this case to the Superior Court with instructions to enter judgment in Lincoln's favor.