I. Shane OLSHANSKY, et al.

v.

REHRIG INTERNATIONAL, et al.

No. 2004–184–Appeal.

Supreme Court of Rhode Island.

May 3, 2005.

Desiree M. Santilli, Providence, for Plaintiffs.

Michelle M. Lataille, for Defendants.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

**PER CURIAM.**

Unfortunately for the plaintiffs, I. Shane Olshansky (Mr. Olshansky) and his wife, Myra Olshansky (Mrs. Olshansky) (collectively plaintiffs), the wheels on their lawsuit against the defendant, Rehrig International (Rehrig or defendant), came off when they failed to conduct discovery in a timely manner. The plaintiffs have appealed from a summary judgment granted in the Superior Court, in favor of the defendant, under the theories of strict liability, negligence, breach of warranty and loss of consortium.[1]

This case came before the Supreme Court for oral argument on April 6, 2005, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments raised by counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown, and proceed to decide the appeal at this time. For the reasons indicated herein, we affirm the judgment of the Superior Court.

## I

### Facts and Travel

The underlying facts pertaining to this case are limited. Although summary judgment was granted just one month before the case was scheduled for trial and more than two years after plaintiffs commenced the action, very little discovery was conducted, particularly by plaintiffs. The record contains only the following: one deposition of Mr. Olshansky taken by

---

1. The plaintiffs initially filed complaints against both Rehrig and Ann & Hope, Inc. (Ann & Hope) on November 21, 2001. Ann & Hope did not file an answer until November 4, 2004, more than five months after the May 2004 hearing at which the motion justice granted summary judgment in Rehrig's favor. Pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure, judgment was issued only with respect to Rehrig; thus Ann & Hope is not involved in this appeal.

defendant; plaintiffs' responses to Rehrig's request for interrogatories; and the various pleadings that plaintiffs and defendant filed. Accordingly, the facts below are gleaned entirely from Mr. Olshansky's deposition testimony and the parties' briefs. As required in an appeal from summary judgment, we resolve any inconsistencies in the light most favorable to the nonmoving party, in this case plaintiffs. *Mills v. State Sales, Inc.*, 824 A.2d 461, 467 (R.I.2003).

On November 22, 1998, Mr. Olshansky went to the Ann & Hope department store in Warwick, Rhode Island, to return a comforter for his mother. Upon arriving, Mr. Olshansky selected a shopping cart allegedly manufactured by defendant to carry the goods he was returning. Because the store would be closing shortly after his arrival, Mr. Olshansky quickly pushed the cart up and down the aisles, searching for the appropriate department. While pushing the cart around a corner, Mr. Olshansky suddenly felt himself being propelled forward; apparently, the basket portion of the cart had come apart from the wheels, causing him to fall to the floor. As a result of the accident, Mr. Olshansky claims he suffered injury to his knees, back, head and arm. In addition, he claims he was unable to continue working as he had been previously and eventually was treated for depression.

On November 21, 2001, plaintiffs filed a complaint against defendant and Ann & Hope, alleging strict liability, negligence, breach of warranty and loss of consortium. Rehrig filed a cross-claim against Ann & Hope seeking contribution or indemnification; Ann & Hope did not file any responses until three years later. In May 2004, the motion justice granted defendant's motions for summary judgment. The motion justice ruled that based on the evidence on the record, "it would be impossible for the plaintiff[s] to establish a prima facie case." In his findings, the motion justice emphasized plaintiffs' failure to produce expert testimony to support any of their theories of recovery.

The plaintiffs argue on appeal that expert testimony was not required for any of their claims and that the circumstantial evidence on the record was enough to survive summary judgment. In the alternative, plaintiffs asserted that this case should be remanded to the Superior Court to allow the parties time to continue conducting discovery. For the following reasons, we are not persuaded by plaintiffs' arguments and affirm the motion justice's decision for the following reasons.

## II

### Standard of Review

■ As noted above, "[i]n ruling on a motion for summary judgment, the hearing justice reviews the evidence in the light most favorable to the nonmoving party." *Mills*, 824 A.2d at 467. The moving party bears the burden of proving that no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Id.* This burden is satisfied by "submitting evidentiary materials, such as interrogatory answers, deposition testimony, admissions, or other specific documents, and/or pointing to the absence of such items in the evidence adduced by the parties." *Id.* (quoting *Heflin v. Koszela*, 774 A.2d 25, 29 (R.I.2001)). "If the moving party establishes this initial burden, the nonmoving party then must identify any evidentiary materials already before the court or present its own evidence demonstrating that factual questions remain." *Id.* On appeal, we review a motion justice's grant or denial of a motion for summary judgment *de novo*, and apply the same standards set forth above. *Id.*

## III

### Strict Liability

First, we turn to plaintiffs' strict liability claim. In *Ritter v. Narragansett Electric Co.*, 109 R.I. 176, 192, 283 A.2d 255, 263 (1971), we adopted the doctrine of strict liability of tort in products liability cases as set forth in the Restatement (Second) *Torts* § 402A (1965). We held that one who sells a product in a "defective condition unreasonably dangerous" is subject to liability for harm suffered by the ultimate user or consumer if: (1) "the seller is engaged in the business of selling such a product," and (2) the product "is expected to and does reach the user or consumer without substantial change in the condition in which it is sold." *Ritter*, 109 R.I. at 188, 283 A.2d at 261. "In a strict liability action, the plaintiff has the burden of proving a defect in the design or manufacture that makes the product unsafe for its intended use, and also that the plaintiff's injury was proximately caused by this defect." *Thomas v. Amway Corp.*, 488 A.2d 716, 722 (R.I.1985). A plaintiff is permitted to draw inferences of fact based on circumstantial evidence; however, simply establishing that use of the product resulted in injury will not satisfy the burden. *Id.*

After considering all of the evidence in the light most favorable to plaintiffs, the motion justice determined that, without presenting expert testimony, plaintiffs could not establish whether a defect existed at the time the shopping cart left defendant's possession or whether that defect caused Mr. Olshansky's injuries. The plaintiffs argue that expert testimony was not required because shopping carts are within the common understanding of jurors. Although average lay persons use shopping carts every day, we conclude that only an expert who understands the mechanics of constructing such a cart could

understand and explain the mechanics of the cart and whether a defect proximately caused an injury such as Mr. Olshansky's. Without more information about the defect itself, or the history of the cart—including how long ago it left defendant's possession and what happened to it since then—no reasonable jury could find that defendant was strictly liable for Mr. Olshanksy's injuries. An expert familiar with shopping carts would be needed to explain to a jury what defect, if any, was present; whether that defect was attributable to manufacture, design, maintenance or some other factor; and whether such a defect could cause the harm Mr. Olshansky suffered. Therefore, we hold that the motion justice properly granted defendant's motion for summary judgment based on the record below because, as a matter of law, plaintiffs failed to establish a strict liability cause of action against defendant.

In plaintiffs' alternative argument, they claim that this case should be remanded so that they can continue discovery and possibly seek the assistance of an expert witness. During the hearing on defendant's motion for summary judgment, however, the motion justice specifically asked how plaintiffs intended to proceed without presenting any expert testimony. The plaintiffs' lawyer responded that "[i]n the event that defense counsel is to utilize the testimony of an expert witness, then we reserve one as well." The motion justice then reminded plaintiffs' counsel that she had the burden of proving a prima facie case, and that without an expert she would be unable to do that. He also reminded plaintiff's counsel that a defendant had no burden to produce anything and, thus, it made no sense for plaintiffs to base their decision to call an expert witness on defendant's decision to do the same. To that statement plaintiffs' counsel responded: "It is our contention that when the

wheel assembly from the shopping cart disengaged, that is prima facie evidence of a defective product." It is clear to us, as it was to the motion justice, that plaintiffs had no intention of presenting an expert witness and, thus, they failed to meet the burden required to survive a motion for summary judgment. The motion justice clearly put plaintiffs on notice of what would be required to defeat defendant's motion, but they failed to respond accordingly. We will not step in now, on appeal, to give plaintiffs a second bite of the apple.

In addition, plaintiffs assert that the motion justice improperly placed the burden on them to establish that the cart was in the same allegedly defective condition as when it left defendant's possession. This argument need not detain us long. It is well established that a plaintiff does, as the motion justice recognized, bear the burden of proving " 'that the product was in a defective condition at the time that it left the hands of the particular seller.' " *Ritter*, 109 R.I. at 190, 283 A.2d at 263; *see also Raimbeault v. Takeuchi Manufacturing (U.S.), Ltd.*, 772 A.2d 1056, 1063 (R.I.2001) (quoting *Simmons v. Lincoln Electric Co.*, 696 A.2d 273, 276 (R.I. 1997)) (stating that to survive a motion for summary judgment the plaintiff must introduce evidence to demonstrate that the product was defective when it left defendant's hands, "and that any such defect was the proximate cause of [plaintiff's] injuries"). Mr. Olshansky's response during his deposition that the cart looked like all of the other carts does not, as plaintiffs contend, "create a material issue of fact that the cart was unchanged when it left the manufacturer's hands." Mr. Olshansky's comparison of one cart at Ann & Hope to other carts on the premises does not provide meaningful evidence about what condition the cart was in when it left defendant's possession. The plaintiffs'

only evidence of a defect is the fact that the basket came off the wheels while Mr. Olshansky was using the shopping cart. We reiterate our statement in *Thomas*, 488 A.2d at 722, that simply alleging that the use of a product resulted in injury is not enough to establish product liability. Clearly, plaintiffs' argument is misplaced because they *did* bear the burden of proving the cart's condition when it left Rehrig's possession, and they failed to meet that burden.

Perhaps the most strained of plaintiffs' strict liability arguments is the contention that, at trial, they would be able to prove that the defect was present when it left defendant's possession through the doctrine of *res ipsa loquitur*. A well recognized legal principle, *res ipsa loquitur* "establishes inferential evidence of a defendant's *negligence*, thus making out a prima facie case for a plaintiff, and casts upon a defendant the burden of rebutting the same to the satisfaction of the jury." *McLaughlin v. Moura*, 754 A.2d 95, 98 (R.I.2000) (quoting *Errico v. LaMountain*, 713 A.2d 791, 795 (R.I.1998)) (emphasis added). Conversely, "[u]nder the doctrine of strict liability in tort for defective design, it is immaterial whether the manufacturer was negligent * * *." *Ritter*, 109 R.I. at 190, 283 A.2d at 262. Undeniably, even if this case were to be tried, plaintiffs would be unsuccessful in attempting to apply the theory of *res ipsa loquitur* to their strict liability claim.

Notwithstanding plaintiffs' flawed application of the law, the facts are such that *res ipsa loquitur* would fail to advance their negligence claim as well. "*Res ipsa loquitur* requires the occurrence of an event that would not happen without negligence, committed by an agent who was acting within the *exclusive control of a defendant* and without any contributory or voluntary action by the plaintiff." *Lauro*

*v. Knowles*, 739 A.2d 1183, 1185 (R.I.1999) (emphasis added). The shopping cart was at Ann & Hope when the accident occurred. There is no evidence whether the cart had been at the store for several years or for several hours. Regardless, it clearly was not in the exclusive control of defendant, the manufacturer of the cart, but under the control of Ann & Hope and its agents. Therefore, plaintiffs' argument under the doctrine of *res ipsa loquitur* fails whether improperly considered under strict liability, or correctly considered under a negligence theory.

■■■ Finally, in an argument that infuses both strict liability and negligence, plaintiffs allege that defendant failed to make the shopping cart in question available for inspection and, thus, for summary judgment purposes, it should be inferred that production of the cart would be unfavorable to defendant. The plaintiffs rely on *Tancrelle v. Friendly Ice Cream Corp.*, 756 A.2d 744, 748 (R.I.2000), presumably where we discuss the doctrine of spoliation, which allows an inference that missing evidence would be unfavorable to the party that fails to produce it. In this case, there is no evidence that the shopping cart in question either is missing or was kept from plaintiffs. The plaintiffs filed the complaint against defendant in November 2001, yet their first request for discovery was not filed until the end of April 2004— less than two months before the case was set to go to trial and three weeks after defendant filed its motion for summary judgment. Although in their request for production of documents plaintiffs ask for any documents pertaining to the location of the actual shopping cart, there was no request that defendant make the shopping cart available to plaintiffs. At oral argument, defendant's attorney informed this Court that the very cart at issue has been in Rehrig's possession and available for plaintiffs' inspection since the accident occurred. Clearly, the doctrine of spoliation has no application here and we will not infer that the shopping cart is defective simply because plaintiffs have not inspected it. Once again, we conclude that plaintiffs have failed to present enough evidence to support their strict liability claims and that the motion justice was correct to grant summary judgment.

## IV

### Negligence

■■■ We turn now to plaintiffs' claim of negligence. To prevail in a negligence cause of action, a plaintiff has the burden of establishing "a legally cognizable duty owed by a defendant to a plaintiff, a breach of that duty, proximate causation between the conduct and the resulting injury, and the actual loss or damage." *Mills*, 824 A.2d at 467–68 (quoting *Jenard v. Halpin*, 567 A.2d 368, 370 (R.I.1989)). "[E]xpert testimony is required to establish any matter that is not obvious to a lay person and thus lies beyond common knowledge." *Id.* at 468. To defeat a motion for summary judgment on a negligence claim, a plaintiff must point to or supply affidavits or other evidence to establish that the defendant's negligence proximately caused the plaintiff's injury. *Id.* at 467–68 (holding that the plaintiff's contention that she could prove a causal connection through expert testimony, without supplying any expert testimony at the summary judgment hearing, did not defeat the defendant's motion for summary judgment because she failed to present any evidence to substantiate her claim of negligence).

As discussed above, the only facts in the record before us are those supplied by Mr. Olshansky himself through his deposition testimony and his answers to interrogatories. We know only that he claims he was

injured when the shopping cart he was pushing fell apart while he was shopping at Ann & Hope. The plaintiffs supplied no evidence to support their contention that defendant negligently manufactured, designed, inspected, repaired or maintained the shopping cart. No evidence exists on the record to indicate that defendant's negligence caused Mr. Olshansky's injury. We are dismayed by the fact that, even when faced with a motion for summary judgment, plaintiffs supplied no additional information to support their arguments. The plaintiffs did not depose anyone either at Rehrig or Ann & Hope; they failed to obtain any documents relating to the shopping cart or Mr. Olshansky's accident; and they failed to obtain any other evidence through discovery to prove their case.

There are endless possibilities about what caused the basket to come apart from the wheels. For example, the cart could have rusted after sitting out in the elements for years at Ann & Hope, or a car could have hit the cart in the parking lot, thus dislodging the wheels. Without speculating further about what could have caused the cart to disassemble, we conclude that plaintiffs have not shown that defendant's negligence proximately caused Mr. Olshanksy's injury. Thus, the motion justice was correct in determining, as a matter of law, that plaintiffs failed to prove their negligence cause of action against defendant.

## V

### Breach of Implied Warranty

■ The plaintiffs' allegation of breach of implied warranty of merchantability was brought under G.L.1956 § 6A–2–314 of the Uniform Commercial Code. Section 6A–2–314 provides in pertinent part:

"(1) * * * a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. * * *

"(2) Goods to be merchantable must be at least such as:

(a) Pass without objection in the trade under the contract description; and

(b) In the case of fungible goods, are of fair average quality within the description; and

(c) Are fit for the ordinary purposes for which such goods are used; and

(d) Run, within the variations permitted by the agreement, of even kind, quality, and quantity within each unit and among all units involved; and

(e) Are adequately contained, packaged, and labeled as the agreement may require; and

(f) Conform to the promises or affirmations of fact made on the container or label if any."

■ In *Thomas*, 488 A.2d at 718, the plaintiff[2] claimed that she had broken out in a severe rash as a result of using liquid soap that she had purchased from the defendant. At trial, the plaintiff presented testimony about the severity of her rash but then, after she concluded her case, the defendant's motion for a directed verdict was granted.[3] This Court affirmed the trial justice's decision, holding that the

---

**2.** The original plaintiff, Ms. Thomas, passed away before trial from causes unrelated to the lawsuit. The case proceeded with her estate's administrator substituted as plaintiff.

**3.** A motion for directed verdict is the precursor to a motion for judgment as a matter of law. The standard for granting a directed verdict was the same as the standard for granting a motion for judgment as a matter of law. *See Adams v. Uno Restaurants, Inc.*, 794 A.2d 489, 491 (R.I.2002).

"plaintiff did not present any evidence from which a jury reasonably could have inferred that [the product] * * * would not pass without objection in the trade" or that it "was not of fair average quality or fit for the ordinary purpose of cleaning." *Id.* at 719.

Once again, our holding here is based on plaintiffs' failure to present enough evidence to overcome defendant's motion for summary judgment. Nothing on the record indicates that when the shopping cart was delivered from Rehrig to Ann & Hope it "would not [have passed] without objection in the trade." *Thomas,* 488 A.2d at 719. Similarly, without establishing that the cart left defendant's control in a condition below "fair average quality" or unfit for the purpose of carrying goods, plaintiffs are unable to meet their burden of proving that defendant breached its implied warranty of merchantability. *Id.* Therefore, we affirm the motion justice's decision and hold that, as a matter of law, plaintiffs are not entitled to recover from defendant under the theory of breach of implied warranty.

In *Thomas,* we further stated that in an action for breach of implied warranty of merchantability, "[t]he plaintiff is not bound to exclude every other possible cause of her condition but she is required to show that the probable cause was the [product]." *Thomas,* 488 A.2d at 719. While this statement of law certainly applies to the case before us now, we note that it was misapplied under the doctrine of implied warranty of merchantability in *Thomas.* As discussed above, the key to determining liability under the theory of

breach of implied warranty is whether the seller breached its duty to deliver the product in the proper condition. If the seller fails to deliver the product as required, then breach has occurred and the buyer [4] may recover. The above statement of law would be better applied under a claim of negligence, for which causation is an indispensable element. Notwithstanding, there can be no doubt that here, plaintiffs certainly did not show that a defect in the cart attributable to Rehrig caused Mr. Olshanksy's condition.

## VI

### Loss of Consortium

It is well settled that a loss of consortium claim "depends on the success of the underlying tort claim." *Soares v. Ann & Hope of Rhode Island, Inc.,* 637 A.2d 339, 353 (R.I.1994). Thus, because plaintiffs' strict liability, negligence and breach of warranty claims arising from Mr. Olshansky's injuries all fail, so too must Mrs. Olshansky's claim for loss of consortium.

### Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court. The record shall be remanded to the Superior Court.

4. Although Mr. Olshansky is not the purchaser of the shopping cart, warranties of merchantability discussed in G.L.1956 § 6A–2–ably be expected to use, consume, or be affected by the goods." Section 6A–2–318.

314 extend to "any person who may reason-