DECISION
Before the Court are the motions for summary judgment of Defendant American Home Assurance Co. ("American Home") against Plaintiffs Vermont Mutual Insurance Co. ("Vermont") and Washington Trust Co. ("Washington"). American Home seeks summary judgment in two separate actions arising out of the same set of facts and hinging on the same insurance policy, issued by American Home to the now-defunct company Heating Oil Partners, LP ("HOP"). The parties dispute whether this insurance policy covers damage resulting from oil pollution caused by HOP. For the reasons set forth below, this Court holds that the policy does not cover such damage, and grants American Home's motions for summary judgment.
 I Facts
The late Josephine Carroll ("Carroll") contracted with DDLC Energy ("DDLC") and HOP to deliver heating oil to her home at 249 Shore Road in Westerly, Rhode Island. Carroll's heating oil consumption was consistent from June 1999 until June 2002, at which point her *Page 2 
consumption rose over 48%. At the same time, Carroll placed multiple calls to DDLC complaining that her home had no heat despite this increase in consumption.
In the fall of 2003, it was discovered that there was an oil leak on Carroll's property. Later, the source of the leak was determined to be the feed lines leading to the oil tank. Subsurface investigation revealed several inches of oil on the groundwater table beneath Carroll's land. At all relevant times, Carroll had a homeowner's insurance policy with Plaintiff Vermont.
Also at all relevant times, HOP had a commercial liability insurance policy with Defendant American Home (the "American Home Policy"). The American Home Policy covers "those sums that the insured becomes legally obligated to pay as damages because of . . . `property damage' to which the insurance applies." (American Home Policy at AHA 000009.) The American Home Policy contains an exclusion for "pollution" (hereinafter the "Pollution Exclusion") and specifically excludes from coverage the following:
 (1) . . . "[P]roperty damage" arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:
 . . .
 (d) At or from any premises, site or location on which any insured . . . [is] performing operations if the "pollutants" are brought on or to the premises . . . in connection with such operations by such insured . . .
 (American Home Policy at AHA 000080.)
An endorsement to the American Home Policy, hereinafter the "Wrong Receptacle Endorsement," contains an exception to the Pollution Exclusion for "property damage" resulting from:
 1. The delivery of any liquid product into a wrong receptacle or to a wrong address; or *Page 3 
 2. The erroneous delivery of one liquid product for another by an "auto;" [sic]
 if the . . . "property damage" occurs after such operations have been completed . . . at the site of such delivery.
 (American Home Policy at AHA 000032.)
Another endorsement to the American Home Policy, hereinafter the "Time Element Pollution Endorsement," contains an exception to the Pollution Exclusion for:
 `property damage' arising out of the actual discharge, dispersal, seepage, migration, release or escape of pollutants, provided that:
 1. Such pollution commences during the term of this policy,
 2. An insured discovers the commencement of such pollution no later than seven (7) calendar days after it commences, and
 3. The insured reports the commencement of such pollution to us in writing no later than twenty-one (21) business days following its discovery by any insured.
 (American Home Policy at AHA 000081.)
Pursuant to the American Home Policy's "Named Insured Endorsement," both HOP and DDLC were named as insured parties. (American Home Policy at AHA 000036.)
Carroll died in 2004, and Plaintiff Washington Trust Co. ("Washington") took title to the property pursuant to the terms of her will.
On September 22, 2004, Vermont brought a subrogation action against DDLC and HOP (WC-2004-0591). Pursuant to G.L. 1956 § 27-7-2.4, Vermont amended its complaint to substitute American Home as the Defendant after DDLC and HOP filed for bankruptcy. Washington filed suit against American Home in 2008, after it became apparent that the cost of remediation would exceed the policy limits of the Vermont Policy (WC-2008-0137).
Defendant American Home has filed identical motions for summary judgment in both cases. American Home argues that it is entitled to judgment as a matter of law under the *Page 4 
uncontested facts of this case, because the American Home Policy expressly excludes damage for "pollution."
Plaintiffs have filed a joint objection to American Home's motion. Plaintiffs argue that Defendant is not entitled to judgment as a matter of law, because the American Home Policy expressly provides coverage for the misdelivery of liquids, and because the American Home Policy provides an exception to the Pollution Exclusion where the insured discovers the pollution.
 II Standard of Review
On a motion for summary judgment, the moving party has the initial burden of (1) bringing forth admissible evidence to suggest that there is no genuine issue of material fact, and (2) establishing that the moving party is entitled to judgment as a matter of law. SeeOlshansky v. Rehrig Intern., 872 A.2d 282, 286 (R.I. 2005). To survive a motion for summary judgment, the non-moving party need only bring forth admissible evidence to demonstrate that there is a genuine issue of fact material to the legal issues of the case. Id. The hearing justice must view the evidence in the light most favorable to the non-moving party, and may neither weigh the evidence nor otherwise attempt to resolve factual disputes. See Palmisciano v. BurrillvilleRacing Ass'n, 603 A.2d 317, 320 (R.I. 1992).
This standard reflects the policy that summary judgment is "a drastic remedy" that "should be dealt with cautiously." Estate of Giuliano v.Giuliano, 949 A.2d 386, 390 (R.I. 2008). Overall, the court should only grant a motion for summary judgment where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. See Olshansky, 872 A.2d at 286. *Page 5 
 III Analysis
To survive summary judgment on a claim under § 27-7-2.4, Plaintiffs must demonstrate that there is a genuine issue of material fact as to whether the American Home Policy provides coverage for the oil spillage that occurred here. See Toledo v. Van Waters Rogers, Inc.,92 F. Supp. 2d 44, 49-50 (D.R.I. 2000) (construing Fed.R.Civ.P. 56). With regard to construction of the American Home Policy, the parties are in agreement that either New York or Connecticut law applies to this case, on the ground that "the law of the state where the contract was executed governs." DeCesare v. Lincoln Benefit Life Co., 852 A.2d 474, 483
(R.I. 2004). The parties also agree that New York and Connecticut employ substantially similar rules when interpreting insurance contracts.
"The unambiguous terms of an insurance contract must be accorded their plain and ordinary meaning." NIACC, LLC v. Greenwich Ins. Co.,87 N.Y.S.2d 723, 724 (App.Div. 2008); see also Taylor v. Mucci,952 A.2d 776, 780 (Conn. 2008) ("If the terms of the policy are clear and unambiguous, then the language . . . must be accorded its natural and ordinary meaning."). Any ambiguities, however, are to be construed in favor of the insured. NIACC, 87 N.Y.S.2d at 724; NationalGrange Mut. Ins. Co. v. Santaniello, 961 A.2d 387, 393 (Conn. 2009). Another general rule of construction is that, in the case of inconsistency between endorsements and basic policy provisions, the endorsements will prevail. See Richard A. Lord, Williston onContracts § 49:23 (2008). Finally, "policy language will be construed as laymen would understand it and not according to the interpretation of sophisticated underwriters. . . ." Santaniello, 961 A.2d at 394
n. 13 (internal quotation removed); see also Villanueva v. PreferredMut. Ins. Co., 851 N.Y.S.2d 742, 743 (App.Div. 2008). *Page 6 
Here, there is no question that the Pollution Exclusion applies in the first instance. There is also no question that the Endorsements will prevail over this exclusion if they apply here. The only remaining question is whether there are facts on the record under which either Endorsement could apply to provide coverage here. The Court will now proceed to address each Endorsement in turn.
1. The Wrong Receptacle Endorsement
Under the Wrong Receptacle Endorsement, the issue is whether "delivery . . . into a wrong receptacle" could have occurred here. Plaintiffs argue that a receptacle at the end of a leaky feed line is plainly a wrong receptacle simply by virtue of its damaged state. Plaintiffs further argue that the term "wrong receptacle" is at the very least ambiguous and, therefore, that the term should be interpreted to provide coverage. American Home argues that the oil here was not delivered into a wrong receptacle because the tank which Plaintiffs argue was "wrong" was actually the intended receptacle for the oil. American Home further argues that the oil here was not delivered into a wrong receptacle because it was not actually delivered into any receptacle at all.
The word "wrong" means "2. not in accordance with an established standard, previous arrangement, given intention, etc. . . . 3. not suitable or appropriate."[1] Webster's New Universal UnabridgedDictionary (2d Ed.) at 2112. In light of this definition, no reasonable person could think that Carroll's oil tank was "a wrong receptacle" because (a) the parties do not dispute that the oil tank was the intended receptacle for oil delivery (and therefore in accordance with the previous arrangement between Carroll and the oil delivery companies), and (b) Plaintiffs have pointed to no evidence that the receptacle itself was not suitable for oil delivery. Instead, *Page 7 
Plaintiffs argue that "from a layperson's viewpoint, a fuel oil receptacle is clearly the `wrong receptacle' if it connects to a damaged fuel line. . . ." (Plaintiffs' Memo at 11.) However, Plaintiffs' indictment goes to the fuel line, not to the receptacle itself. Accordingly, there is no evidence to suggest that the oil tank here was a "wrong receptacle," even under a layperson's interpretation of the American Home Policy.
Moreover, the real problem here was not delivery to Carroll's tank, but rather the failure to deliver oil to Carroll's tank. New York and other courts have held that delivery which does not reach any receptacle at all cannot fall under "wrong receptacle" language in an insurance contract. See Mohawk Val. Fuel Co. v. Home Indem. Co., 8 Misc.2d 445, 165 N.Y.S.2d 357 (N.Y.Sup. 1957) (delivery onto basement floor not delivery "into the wrong receptacle"); see also Este OilsCo. v. Federated Ins. Co., 132 Ohio App.3d 194, 201, 724 N.E.2d 854,858-59 (Ohio App. 1 Dist. 1999) (delivery onto basement floor not covered under "wrong receptacle" provision). This construction applies with equal force here, where the fuel was delivered onto the water table below the property at issue.
Because there was no "delivery . . . into a wrong receptacle" here, the oil spillage is not subject to the "wrong receptacle" endorsement under the American Home Policy. Therefore, the Court will now turn to the Time Element Pollution Endorsement.
2. The Time Element Pollution Endorsement
The Time Element Pollution Endorsement to the American Home Policy presents a threefold inquiry. This Endorsement provides coverage for:
 `property damage' arising out of the actual discharge, dispersal, seepage, migration, release or escape of pollutants, provided that:
 1. Such pollution commences during the term of this policy, *Page 8 
 2. An insured discovers the commencement of such pollution no later than seven (7) calendar days after it commences, and
 3. The insured reports the commencement of such pollution to us in writing no later than twenty-one (21) business days following its discovery by any insured.
Under the first prong, there is no dispute that the oil spillage at issue here occurred during the term of the American Home Policy. The issues are: under the second prong, whether the "insured discover[ed] the commencement of such pollution no later than seven (7) days after it commence[d]"; and under the third prong, whether "[t]he insured report[ed] the commencement of such pollution to [American Home] in writing no later than twenty-one (21) business days following its discovery by the insured."
With regard to the second prong — whether the insured discovered the commencement of the pollution no later than seven days after it commenced — Plaintiffs argue that oil pollution has "commenced" only when the damage is reasonably discoverable. Here, Plaintiffs argue, the pollution only commenced when Carroll could smell the leaking oil. Defendants counter that the term "commence" should be afforded its plain meaning: that the pollution commenced the first day that oil escaped from the fuel line.
This Court is persuaded by Plaintiffs' argument that a pollution event only commences when the event is reasonably discoverable. There appears to be no binding New York or Connecticut precedent interpreting the word "commence" in this context.[2] Thus, it falls to the Court to determine how a layperson might interpret that term, keeping in mind that ambiguities will generally be construed in favor of coverage.See NIACC, 87 N.Y.S.2d at 724; Santaniello, *Page 9 961 A.2d at 394 n. 13; Villanueva, 851 N.Y.S.2d at 743. This Court finds a convincing analogue in the Rhode Island Supreme Court's holding that "an `occurrence' under a general liability policy takes place when property damage, which includes property loss, manifests itself or is discovered or in the exercise of reasonable diligence, is discoverable."CPC Intern., Inc. v. Northbrook Excess Surplus Ins. Co.,668 A.2d 647, 649 (R.I. 1995). Following this definition of occurrence, an occurrence commences when property damage is first discoverable.See id.
Here, Plaintiffs posit that "the pollution at issue in this case did not `commence' until October 1, 2003 when a Josephine Carroll [sic] noticed a `funny smell' emanating from the crawl space of her home." Indeed, a jury could find that the time when Carroll noticed the "funny smell" was the first time that the pollution manifested itself and became discoverable; therefore, a jury could find that the pollution commenced on October 1, 2003. A work order reveals that on October 2, 2003 — the next day — DDLC went to the property at issue here and discovered the oil spillage. Therefore, if a jury found that the pollution commenced on October 1, 2003, then it would logically follow that DDLC, an insured, "discover[ed] the commencement of such pollution no later than seven (7) days after" Carroll noticed the "funny smell." Accordingly, the facts adduced here support a jury finding that DDLC, an insured, discovered the pollution within seven days after the pollution commenced.
However, even if there is an issue of fact as to whether the insured discovered the commencement of the pollution within seven days, the Endorsement does not apply here because Plaintiffs have brought forth no evidence that any insured ever reported the pollution to American Home. At the first hearing on these motions, the Court continued the matter to allow Plaintiffs to discover whether DDLC ever reported the pollution to American Home. At the second hearing on these motions, Plaintiffs admitted that they had been unable to obtain any such *Page 10 
evidence. Therefore, Plaintiffs have not brought forth evidence to support a finding that the Time Element Pollution Endorsement applies here. Accordingly, the Time Element Pollution Endorsement does not apply to these facts as a matter of law.
 IV Conclusion
Because it is undisputed that the Pollution Exclusion applies to these facts, and because neither the Wrong Receptacle Endorsement nor the Time Element Pollution Endorsement applies to provide coverage notwithstanding the Pollution Exclusion, American Home is not liable to Plaintiffs in these subrogation actions and is entitled to judgment as a matter of law. Accordingly, this Court now grants American Home's motions for summary judgment.
Counsel for American Home shall prepare an order within ten days.
[1] The first definition refers to the moral element of the word "wrong"; it is unlikely that a receptacle could be either "sinful" or "wicked."
[2] Olin Corp. v. Certain Underwriters at Lloyd's London, 468 F.3d 120, 128 n. 5 (2d Cir. 2006), comes the closest to providing a binding definition by commenting in a footnote on a question that was not before the court: "Neither party addresses the period at which property damage commences. All parties seemingly agree that damage begins once active pollution commences-that is, at the initial act of putting the contaminant onto the land or water. For the purposes of our analysis here, and because the parties have not argued otherwise, we do not disagree."