DECISION
Before this Court is the motion of the Arnolda Improvement Corporation ("AIC" or the "Plaintiff") for summary judgment against David R. Bailey, Patricia J. Bailey (the "Baileys"), and Marilyn S. Ryan ("Ryan" or collectively the "Defendants"). AIC filed an amended complaint against the Defendants, Bartlett and Company Antiques, Inc., Boat Cove Dock Association, and Chester T. Davis seeking unpaid homeowners' association assessments for 2008 and 2009. Counts one, two and three of the amended complaint assert claims for breach of implied contract, breach of duty to maintain easement/right of way, and unjust enrichment against all of the Defendants. Count four of the amended complaint seeks a declaratory judgment against the Defendants pursuant to G.L. 1956 § 9-30-1 et seq., requesting this Court declare the Defendants liable for any future assessments. Additionally, count five of the complaint seeks breach of covenant to pay assessments against Bartlett and Company Antiques, Inc., and Boat Cove Dock Association only. Since the filing of the verified complaint, Bartlett and Company Antiques, Inc., Boat Cove Dock Association, and Charles T. Davis have been dismissed from the case. Jurisdiction is pursuant to G.L. 1956 § 8-2-14. *Page 2 
 I Facts and Travel
The Arnolda community is a private neighborhood located in the town of Charlestown, Rhode Island. Each of the Defendants is an owner of real property within the Arnolda community. The Baileys purchased 89/91 Hunters Harbor Road, Charlestown, Rhode Island, in 1995. Ryan owns 29 Dudley Lane, Charlestown, Rhode Island, which she purchased in 1992. Within the Arnolda community are private rights of way that lead out to Old Post Road, a/k/a "the State Highway." Both the Baileys and Ryan received a right of way to pass and re-pass along the private roads that lead to the State Highway in their deeds. In addition to the right of way, the Baileys and Ryan also received the right to use a private beach on the other side of Ninigret Pond in their deeds. Specifically, the Baileys' deed provides them with,
 [a] right of way for the use and benefit of said grantees, their heirs and assigns, guests, tenants and servants at all time to pass and repass on foot or with vehicles between said described parcel and the State Highway over the roads as now maintained. And said grantees, their heirs and assigns, for their own use and for the use of their guests, and servants shall have a right of way to the beach or ocean over and across the beach land now formerly of Thomas L. Arnold.
Additionally, Ryan's deed specifically provides,
 the right of ingress and egress over the existing roads to the main highway known as U.S. Route No. 1 . . . [t]ogether with a right to the use of the lot on the `Arnolda Beach.'
Neither deed makes any references to AIC or any other homeowners' association. Further, the deeds contain no covenants or restrictions which require the Baileys or Ryan to become members of AIC or any other association.
AIC was organized in 1933, by members of a residential community in Charlestown, Rhode Island, as a private neighborhood association to govern and administer different aspects of *Page 3 
the community. In order to maintain the private association, AIC is authorized to administer assessments upon all the property owners within the community relating to the maintenance and upkeep of the common areas. AIC relies on the assessments billed to homeowners each year to maintain the common areas within the community. According to its 1993 BY-LAWS, any owner of real estate within the Arnolda community "may become a member of the Arnolda Improvement Corporation upon submitting a letter of application andbeing accepted by a majority vote of the membership." (emphasis added). Members of AIC are allowed access to bath houses, boat houses, club houses, docks, tennis courts, recreational facilities and youth and social programs. Non-members of AIC have no voting rights and no right to attend AIC's meetings.
After purchasing their properties in Arnolda in 1992, and 1995, the Baileys and Ryan became members of the AIC and paid the assessments distributed by AIC. In 2008, AIC distributed it annual assessments to all of the Defendants, with each Defendant responsible for $1,145. Of the assessment, $540 represented "Resident Fees," $300 represented "Road Maintenance," $250 represented "Road Repaving," and $55 represented a "Membership Fee." In 2009, AIC assessed the Defendants a total fee of $795. Of the $795, $370 was assessed for "Resident Fees," $300 was assessed for "Road Maintenance," and $125 was assessed for "Road Repaving." The exhibits provided to the Court regarding the assessments do not provide an itemized breakdown of what constitutes the "Resident Fees." Prior to the start of the 2008 season, the Baileys terminated their membership in the AIC in writing, and Ryan terminated her membership in AIC prior to the 2009 season. The Baileys then refused to pay their assessments for 2008 and 2009, and Ryan has refused to pay her assessment for 2009. AIC seeks to collect the full membership dues and fees from the Baileys and Ryan for both 2008 and 2009, including *Page 4 
the portion of the assessments relating to "Resident Fees."
On March 11, 2009, AIC filed a four count complaint against the Defendants. Count one of the complaint seeks damages against the Defendants for Breach of Implied Contract for their failure to pay the 2008 and 2009 assessments. Count two asserts a breach of a duty to maintain easement/right of way against the Defendants for their failure to contribute to the costs of maintaining their easements. Count three seeks a judgment for unjust enrichment against the Defendants for the work done by AIC to maintain the common areas. Finally, count four seeks a declaratory judgment against the Defendants requiring them to pay any future assessments.
On August 6, 2009, AIC filed a motion for summary judgment against the Defendants. As part of their motion for summary judgment, AIC submitted the affidavits of Deborah Brink, the President of AIC, and Arthur Haskins, the Treasurer of AIC and various exhibits. The Baileys and Ryan objected to AIC's motion for summary judgment, but "they have agreed to pay the portion of the `bills' they received relating to road maintenance and road improvement and replacement." Additionally, both the Baileys and Ryan have filed affidavits in support of their objection and filed various exhibits with the Court. The exhibits include the bills sent to the Baileys and Ryan along with a picture of a "No Trespassing" sign posted on a dock within Arnolda. On October 19, 2009, this Court held a hearing on AIC's motion. At that time, the Court reserved decision on the motion. For the reasons that follow, this Court now grants in part and denies in part AIC's motion for summary judgment.
 II Standard of Review
"Summary judgment is a proceeding in which the proponent must demonstrate by affidavits, depositions, pleadings and other documentary matter . . . that he or she is entitled to *Page 5 
judgment as a matter of law and that there are no genuine issues of material fact." Palmisciano v. Burrillville RacingAssociation, 603 A.2d 317, 320 (R.I. 1992) (citingSteinberg v. State, 427 A.2d 338 (R.I. 1981); Ludwig v.Kowal, 419 A.2d 297 (R.I. 1980)); Super. Ct. R. Civ. P. Rule 56(c). On a motion for summary judgment, the moving party has the initial burden of (1) bringing forth admissible evidence to suggest that there is no genuine issue of material fact, and (2) establishing that the moving party is entitled to judgment as a matter of law. See Olshansky v.Rehrig Intern., 872 A.2d 282, 286 (R.I. 2005). During a summary judgment proceeding "the court does not pass upon the weight or credibility of the evidence but must consider the affidavits and other pleadings in a light most favorable to the party opposing the motion." Id. (citing Lennon v. MacGregor,423 A.2d 820 (R.I. 1980)). Moreover, "the trial justice must look for factual issues, not determine them. The justice's only function is to determine whether there are any issues involving material facts." Id. (quoting Steinberg v. State,supra at 340). The Court's purpose during the summary judgment procedure is issue finding, not issue determination. IndustrialNational Bank v. Peloso, 397 A.2d 1312, 1313 (R.I. 1979) (citingO'Connor v. McKanna, 359 A.2d 350 (R.I. 1976); Slefkin v.Tarkomian, 238 A.2d 742 (R.I. 1968)). Thus, the only task of a trial justice in ruling on a summary judgment motion is to determine whether there is a genuine issue concerning any material fact.Id. (citing Rhode Island Hospital Trust National Bank v.Boiteau, 376 A.2d 323 (R.I. 1977)).
"When an examination of the pleadings, affidavits, admissions, answers to interrogatories and other similar matters, viewed in the light most favorable to the party opposing the motion, reveals no such issue, the suit is ripe for summary judgment."Id. (citing Rhode Island Hospital Trust National Bank v.Boiteau, supra; O'Connor v. McKanna,supra.) "[T]he opposing parties will not be allowed to rely upon mere allegations or denials in their pleadings. Rather, by *Page 6 
affidavits or otherwise they have an affirmative duty to set forth specific fact showing that there is a genuine issue of material fact." Bourg v. Bristol Boat Co., 705 A.2d 969 (R.I. 1998) (citing St. Paul Fire Marine Insurance Co. v. Russo Brothers,Inc., 641 A.2d 1297, 1299 (R.I. 1994); Super. Ct. R. Civ. P. Rule 56(e)). However, it is not an absolute requirement that the nonmoving party file an affidavit in opposition to the motion. Steinberg v. State, supra. If the affidavit of the moving party does not establish the absence of a material factual issue, the trial justice should deny the motion despite the failure of the nonmoving party to file a counter-affidavit. Id.
 III Analysis
As a preliminary matter the Court notes the parties are in agreement over the fees assessed for road maintenance and road repair. In their memorandum to this Court the Defendants state, "the Baileys and Ryan are willing to pay the fair, non-discriminatory costs associated with road maintenance and improvements. Further, the Defendants state, "AIC's motion for summary judgment should be denied on the condition that the Baileys and Ryan pay (as they have agreed) the road maintenance and road repaving portions of the bills they received from the AIC." As a result, the Defendants' liability for the road maintenance and repair costs associated with the roads located in Arnolda are not in dispute. Therefore, this Court grants summary judgment for AIC on the road repair and maintenance fees, and will not include the road repair and maintenance portion of the assessment in its summary judgment analysis. See, e.g., Lopez v.Blanchard, 2003 WL 2168830, at *8 n. 8 (R.I. Super. June 26, 2003) (declining to determine whether a portion of a right-of-way had been adversely possessed when the parties agreed about ownership). *Page 7 
 A Breach of Implied Contract
AIC first moves for summary judgment and a declaratory judgment on counts one and four of its complaint for breach of implied contract. AIC argues the obligation to pay assessments in a private community does not hinge upon membership within the association, but upon ownership of property within the community. According to AIC, the owners of property in a private community are responsible for paying a proportional share of maintenance costs for common areas. AIC alleges this responsibility exists regardless of any express covenants in the owner's deed or chain of title. AIC asserts the Baileys and Ryan entered into an implied contract to pay their portion of AIC's maintenance fees when they purchased their respective properties. In support of its contentions, AIC cites the cases of Spinnler Point Colony Ass'n, Inc. v. Nash,689 A.2d 1026 (Pa. Cmwlth. 1997), Meadow Run and Mountain LakePark Ass'n v. Berkel, 598 A.2d 1024 (Pa. Super. 1991), andSea Gate Ass'n v. Fleischer,211 N.Y.S.2d 767 (N.Y. Sup. 1960), which AIC contends are factually analogous to the case at bar. Conversely, the Baileys and Ryan contend the cases cited by AIC involve "classic" homeowners' associations "where homeowners buy into a development under a common scheme or pre-recorded covenants." Moreover, according to the Defendants, "[t]he docks and social and recreational and tennis and youth activities of the AIC are not `common facilities' all owners of property in the Arnolda neighborhood of Charlestown have a right to enjoy."
In Meadow Run, the property owner's association acquired ownership of the lakes, dams, roads, and other common areas of the development. Thereafter, the association instituted an annual $300 assessment for the repair, maintenance and improvement of the development's common areas. After refusing to the pay the assessment, the defendants argued absent a specific *Page 8 
covenant in their chain of title, the association did not have the authority to impose an assessment for the repair, maintenance, and improvement of the development's common areas. The court found that, although there was no mention of an assessment, the defendants' deed put them on notice that if an association was formed they would be required to conform with any rules the association might adopt.
In Spinnler Colony, the court expanded on the holding inMeadow Run to a case where the defendants' chain of title was devoid of any reference to any association or requirement to pay assessments. The defendants had purchased a home within an association with deeded rights to use the association's private roads and to access the waters of a lake. After purchasing the property the association assessed dues on the defendants, which the defendants refused to pay. The court noted "[w]hen ownership of property within a residential community allows the owners to utilize the roads and other common areas of the development, there is an implied agreement to accept the proportionate costs for maintaining and repairing these facilities." The court held that property owners "who have a right to travel the development roads and to access the waters of a lake, are obligated to pay a proportionate share for repair, upkeep and maintenance of the development's roads, facilities and amenities."
Finally, in Sea Gate, the plaintiff association brought suit to recover assessments levied against the defendants who owned property within the association, but who were not members of the association. The association was established to maintain, regulate and control the private community, including private streets, beaches and other facilities. When the defendants accepted ownership in their property, they took title subject to the rights of control of the plaintiff. The defendants argued they were not required to pay any assessment because they were not members of the association. However, the court found the defendants liable on an implied in fact contract *Page 9 
theory, which required the defendants to accept the implied terms offered by the association when they bought their property.
Assuming arguendo, Meadow Run, Spinnler Colony, andSea Gate are binding on this Court, this Court finds material issues of fact in dispute, which render the cases distinguishable and summary judgment inappropriate. As distinguished from the defendants in Sea Gate and Meadow Lake, who were on notice of a potential homeowner's association or knew of the association, the Baileys and Ryan have no mention of AIC or any other potential homeowners' association in their deeds or chain of title. Indeed, the affidavit submitted by the Baileys indicates they did not know the AIC existed at the time they purchased their property. Moreover, in this case the Court is uncertain which facilities actually are included in the Defendants' "Resident Fees" assessments. According to the Defendants, the assessment includes maintenance costs for docks, tennis courts, social and recreational activities and other various facilities. Neither of the affidavits submitted to this Court by AIC make any mention of the tennis courts, or social and recreational activities conducted by AIC, or if they are even included in the assessment. The affidavit of Haskins, the Treasurer of AIC, states that of the $1,145 owed for 2008 year, "$565.00 was for maintenance and upkeep of the common dock, beachfront lots and access thereto, access to Ninigret Pond and all ancillary (sic) costs related thereto which include postage, taxes, insurance and legal costs." However, the corresponding "Resident Fees" category in the bill provided to the Court by the Defendants lists those fees at $540. Moreover, the affidavit of Haskins does not mention the tennis courts or social and recreational activities, but the "Arnolda Budget" submitted with the 2008 assessment does include line items for those facilities. Additionally, the 2009 assessment bill suffers from similar ambiguities regarding the specific elements of the assessment. As such, without a specific breakdown of the facilities *Page 10 
included in the assessment, this Court is unable to ascertain what specific facilities the assessment includes.
Further, unlike the defendants in SpinnlerColony — who had a right to access the roads and other common areas by virtue of their ownership of property within the development — the Baileys and Ryan's mere ownership of property in Arnolda may not grant them access to the docks, tennis courts, social and recreational activities, or other common facilities maintained by AIC. As a photo of a "No Trespassing" sign provided to the Court by the Defendants demonstrates, access to certain amenities and facilities are restricted to members of AIC, which the Baileys and Ryan have withdrawn from. The "No Trespassing" sign posted on a dock reads "Arnolda Improvement Corporation Members Guests Only." AIC contends the dock referred to in the assessments is a community dock all members of Arnolda are free to access, but the Defendants assert the sign is from the dock at issue. Further, a number of docks exist within the Arnolda development, and without further elaboration, this Court is uncertain as to which dock, or docks, AIC contends are "common facilities." Further, this Court is without sufficient information to determine the Baileys and Ryan's ability to access other "common facilities" such as the tennis courts, or other recreational activities and facilities if they are part of the assessments. As non-members, the Baileys and Ryan clearly have a right to enjoy the private roads, and access the beach located on Ninigret Pond, but the Defendants ability to access certain docks, tennis courts, recreational activities and other facilities as non-members is disputed. Without more definitive information, a material issue of fact exists regarding whether these items are "common facilities" all owners of property in Arnolda have a right to enjoy. Therefore, this Court finds AIC has failed to meet its initial burden of proof.Heflin v. Koszela, 774 A.2d 25, 29 (R.I. 2001) (the moving party bears the initial burden of establishing that no genuine issues of *Page 11 
material fact exist). Disputed issues of fact exist over what dock is being assessed, whether the tennis courts, social and recreational activities, and other facilities are part of the assessment, and whether these facilities are "common facilities." As such, AIC's motion for summary judgment on count one and four of its complaint — for the portion of the assessment not attributable to road maintenance and repair — are denied.[1]
 B Duty to Maintain Easement/Unjust Enrichment
Next, AIC moves for summary judgment on counts two and three of its complaint for breach of duty to maintain easement/right of way and unjust enrichment. AIC contends it is entitled to summary judgment on both counts because "Defendants have continued to receive the benefit of maintenance and upkeep of their respective easements and rights of way at the expense of AIC." However, as previously noted, a number of factual issues remain uncertain. Specifically, the Court is uncertain as to whether the docks, tennis courts, recreational services, and other amenities are common facilities. In order to determine whether AIC's maintenance of these facilities has inured to the benefit of the Defendants, this Court needs to know whether the Defendants can access these facilities as non-members. As such, because the Court is without sufficient information to resolve the factual discrepancies outlined above, AIC's motion for summary judgment on counts two and three is denied.
 III Conclusion
Based on the foregoing, AIC's motion for summary judgment is denied in part and granted in part. This Court grants AIC's motion for summary judgment on the road maintenance and road repair portions of the 2008 and 2009 assessments. The Court further holds the *Page 12 
Defendants are required to pay the annual assessments for road maintenance and repair so long as they or their successors shall own the property. Further, the Court denies AIC's motion for summary judgment on the remaining portions of the 2008 and 2009 assessments.
Counsel for Defendants shall submit an appropriate order for entry in accordance with this Decision within ten (10) days.
[1] As previously noted, the Defendants do not object to paying their portion of the cost associated with maintaining these easements.